(65 App. Div. 318.)

PEOPLE ex rel. LAZARUS et al. v. FEITNER et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

1. TAXATION—COMMISSIONERS OF TAXES—REVIEW OF DETERMINATION—CERTIORARI.

Where on certiorari under New York City Charter, § 906, providing that certiorari may be brought to review any final determination of the board of taxes and assessments, relator alleged that the assessment of certain of his realty was void by reason of the same having been assessed together with land belonging to others, and the return of the writ recited that such realty, together with other lands included in the assessment, was entirely occupied by one building, and that it was impracticable to apportion the value of the building, relator's offer to show that the lot was leased to a certain person on his covenant to erect an independent building thereon, capable of being inclosed, and that he had erected such building, was not inconsistent with the allegation of the return as to the lots being covered by one building, as the evidence offered would not prove that the substantial allegation that the whole of the lots were covered by one building was not true.

2. SAME—ASSESSMENT TO OWNER—LOTS OF DIFFERENT OWNERS—ASSESSMENT TOGETHER—STATUTES—NEW YORK CITY CHARTER.

New York City Charter (Laws 1897, c. 378) § 894, declares that no taxes shall be void because the name of the original owner is not inscribed in the assessment roll. Section 889 makes it the duty of the deputy tax commissioners to assess all the property in their several districts, furnishing the board of taxes and assessments a detailed statement of all such property, showing that they have examined every house, building, lot, etc., together with the name of the owner, if known. Section 892 enacts that there shall be kept in the several offices of the department of taxes and assessments books in which shall be entered in detail the assessed valuation of the property within the limits of the several boroughs, which record is to be made up by the deputy tax commissioners as directed in section 889; and section 907 requires that the assessment roll shall be prepared from such books. Section 920 provides that any person claiming any undivided part of any lots or premises may pay such part of the sum taxed thereon as the comptroller may deem just and equitable. Held, where a building covered several lots belonging to different owners, that under the provisions of the charter it was proper to include all the lots in one assessment, instead of assessing a certain amount against the owner of each lot.

3. CERTIORARI—RETURN—ALLEGATIONS OF RETURN—EFFECT.

On certiorari under New York City Charter, § 906, providing that the supreme court may issue certiorari to review any final determination of the board of taxes and assessments, the return to the writ must be taken as true.

73 N.Y.S.—7

**4. SAME—STATUTES—PROCEDURE ON RETURN.**

New York City Charter, § 906, allows the supreme court to issue certiorari to review any final determination of the board of taxes and assessments. Tax Law, § 253, provides that if, on the return of such a writ, it appears that the assessment is illegal or erroneous, the court may order the same stricken from the roll. *Held*, that under the latter section the court may not vacate an assessment unless it appear by the allegations of the petition, and is admitted by the return, or from facts set forth in the return, or from evidence taken, that the facts alleged in the petition and denied in the return are true.

Appeal from special term, New York county.

Certiorari by the people, on the relation of Frank Lazarus and others, against Thomas L. Feitner and others, commissioners of taxes and assessments of the city of New York, to review a determination of such board holding an assessment of relator's property valid. From an order sustaining the writ and vacating the assessment, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

James M. Ward, for appellants.
Nelson S. Spencer, for respondents.

INGRAHAM, J. In this proceeding the relator sought to review the action of the commissioners of taxes and assessments in refusing to vacate an assessment upon a certain lot of land, described in the petition as lot No. 35 West Thirteenth street, New York City, "being lot No. 62 in block 577, in Vol. 4 of section 2, on the tax map of said city." The allegation of the petition is that the "said commissioners of taxes and assessments prepared, or caused to be prepared, books called 'The Annual Record of the Assessed Valuation of Real and Personal Estate of the Borough of Manhattan,' in which by law there should have been entered in detail the assessed valuation of your petitioners' said property, setting forth the names of your petitioners, the quantity of real property taxable to them, with a statement thereof in such form as the said commissioners should prescribe, and the full value of such real property. But, notwithstanding said requirements of law, said commissioners of taxes and assessments did not enter, or cause to be entered, in detail, in said annual record, the assessed valuation of your petitioners' said property, and did not set forth therein the names of your petitioners, or the quantity of real estate taxable to them, or the value of such real estate, but, on the contrary, said commissioners wrongfully and unlawfully included the said real property belonging to your petitioners with five other separate lots belonging to other owners, and purported to value the whole of said six lots together at the sum of $320,000, and to assess the same against a certain firm called Ludwig Bros., who were not the owners or occupants of said property"; that "thereafter, and during the time that said books were open to public inspection, to wit, on the 30th day of April, 1900, your petitioners, claiming to be and being aggrieved by said pretended assessment, duly made application in writing to said commissioners of taxes

and assessments to have the same corrected, stating the ground of their objection thereto"; that "said commissioners of taxes and assessments finally determined your petitioners' said application adversely to your petitioners"; and the petitioners ask that the said assessment be declared illegal and stricken from the roll. By the return to the writ it was alleged that the deputy tax commissioner assigned to that duty under the direction of the tax commissioners duly assessed the real estate designated on the tax map as lots Nos. 21, 22, 23, 61, 62, 63, block 577, section 2, for the year 1900, at the sum of $320,000, and duly entered such assessment in the said annual record of the borough of Manhattan; that during the time that the books were open for public inspection the relator submitted to the commissioners and filed in their office a statement in writing, of which a copy is annexed to the return. In this statement the relator alleges that the said assessment is illegal and void for the reason that the assessors "have not set down upon said roll the names of all taxable persons in the tax district, and particularly the names of the owners of said lot 62, the quantity of real property taxable to each person or to said owners, with a statement thereof in any form, or the full value of such real property, but, on the contrary, that they have assessed the said lot No. 62 in bulk with other lots belonging to other owners, contrary to the statute in such case made and provided, and thereby have attempted to deprive the owners of said lot of their legal right to correct any overvaluation or inequality in the assessment thereof." An abstract of the tax records was also annexed to this return, from which it appears that six lots were assessed together at $320,000; lot 62 being included as one of the six lots. The return further states that the relator's premises, namely, lot 62, together with the five other lots above mentioned, which were included in the. return, were occupied entirely by one building, extending from West Thirteenth street through the block to West Fourteenth street, and for that reason it was impracticable to apportion the value of said building among the various parcels upon which it stood. The proceeding came on for hearing at special term upon this petition and return, when counsel for the relator offered testimony, either before the court or a referee to be appointed in the action, that the premises No. 35 West Thirteenth street, known as lot No. 62 on the tax map referred to in the petition, "is leased to Bernard J. Ludwig upon his covenant to erect an independent building capable of being inclosed, with side and rear walls, and that since the lease was made he has erected such a building." This testimony was objected to by counsel for the commissioners on the ground that no such testimony was offered or suggested as a ground for a reduction of the assessment before the commissioners; and, second, that "the proposition now suggested is contradicted by the petition itself," which states that "said commissioners wrongfully and unlawfully, and contrary to the statute in such cases made and provided, have attempted to assess your petitioners on said property in bulk with five other lots." The court reserved decision upon this application, stating that if the decision were against the relator

he would be entitled to an exception, and would protect the relator's rights. Subsequently the court held that upon this record the assessment was void, and an order was entered vacating it.

Upon this appeal we must accept this allegation of the return, viz. that the six lots included in this assessment were occupied entirely by one building, extending from West Thirteenth street through the block to West Fourteenth street, and for that reason it was impracticable to apportion the value of said building among the various parcels from which it stood, as true. The offer to prove was not inconsistent with this allegation. The fact that the property was leased to one Ludwig upon his covenant to erect an independent building capable of being inclosed with side and rear walls, and that since the lease was made he has erected such building, would not prove that the substantial allegation that the whole six lots were covered by one building was not true. There is no allegation or offer to prove that the building so erected was in fact an independent building, which in its present condition could be separately assessed. The fact that it was capable of subsequent inclosure would not make it any the less a part of the building, in the condition that existed at the time the assessment was made. The question, therefore, must be considered in relation to the allegation of the return, that, where one building is erected upon six lots, the said building being in the occupation of one individual, the tax commissioners are bound to assess each lot separately, because each lot is designated separately upon the tax map. Apparently, it could make no difference whether the fee of the six lots was vested in the same individual or in different individuals. By an express provision in the charter of the city of New York (chapter 378, § 894, Laws 1897):

"No tax or assessment shall be void by reason of the name of the rightful owner or owners, whether individuals or corporations, of real estate in any of the said boroughs not being inscribed in the assessment rolls or lists."

If this assessment is void, it must be because of the failure of the commissioners to separately assess each lot as appears upon the tax map. We agree with the court below that this assessment is controlled by the general tax law of the state (chapter 908, Laws 1896), except so far as that is modified by the provisions of the charter, and that in determining the legality of an assessment upon real estate the provisions of the general tax law and the charter must be read together, and the tax, to be valid, must be in substantial conformity with the provisions of these two acts. By section 21 of the tax law it is provided that the assessment roll must contain six separate columns, in which, according to the best information in the power of the assessors in each tax district, they shall set down in the first column the names of all taxable persons; and, second, the quantity of real property taxable to each person; and, third, the full value of such real property. We will assume, without deciding, that this provision, standing alone, would require that there should be separately entered in the assessment roll the real property that was taxable to each person, and that a failure to comply with this condition would render the assessment void.

By the charter of the city of New York, however, it would seem
that these provisions are to some extent modified so far as they
relate to the taxation of real estate within said city. By section
889 of the charter it was made the duty of the deputy tax commis-
sioners, under the direction of the board of taxes and assessments,.
to assess all the taxable property in the several districts that may
be assigned to them for that purpose by said board, and they shall
furnish to the said board, under oath, a detailed statement of all
such property,. showing that deputies have personally examined
"each and every house, building, lot, pier or other assessable prop-
erty, giving the street, lot, ward, town and map number of such
real estate embraced within said districts, together with the name
of the owner or occupant, if known." It is the action of these
officers that is the foundation for the assessment of property in the
city of New York. By section 892 it is provided that:

"There shall be kept in the several offices established by the department
of taxes and assessments books to be called 'The Annual Record of the As-
sessed Valuation of Real and Personal Estate of the Borough of ———,' in
which shall be entered in detail the assessed valuation of such property with-
in the limits of the several boroughs of the city of New York as established
by this act."

This record is to be made up by the deputy tax commissioner
as directed in section 889. By section 894 it is provided that the
assessed valuation of all real and personal property of corpora-
tions "shall be entered in duplicate in the office in the borough
where the same is assessed and in the main office of the depart-
ment of taxes and assessments in the borough of Manhattan." By
section 920 it is provided that:

"If a sum of money in gross has been or shall be taxed upon any lands or
premises, any person or persons claiming any divided or undivided part
thereof may pay such part of the sum of money so taxed, also of the interest
and charges due or charged thereon, as the said comptroller may deem to be
just and equitable; and the remainder of the sum of money so taxed, to-
gether with the interest and charges, shall be a lien upon the residue of the
land and premises only."

Section 899 of the charter requires the deputy tax commission-
ers to compute from the annual record of the assessed valuations of
real and personal estate in each of the said several offices the total
aggregate amount of the assessed valuation of real and personal
property appearing on said books for each of the said boroughs
on the second Monday of January in any year, and to transmit a
statement of such aggregate amounts to the department of taxes
and assessments. The board of taxes and assessments are then
charged with the duty, before opening the books for public inspec-
tion, to fix such valuations of property for the purposes of tax-
ation throughout the city of New York at such sums as will, in
their judgment, establish a just and equal relation between the
valuation of property in each borough and throughout the entire
city. Section 907 requires that the assessment roll shall be pre-
pared from the books of the annual record of assessed valuation of
real and personal property, and these assessment rolls are each
year to be before the first Monday of July delivered by the board

of taxes and assessments to the municipal assembly. Section 910 requires the municipal assembly to estimate and set down in a fifth column to be prepared for that purpose in the assessment rolls, opposite to the several sums set down as the valuation of real and personal property, the respective sums, in dollars and cents, to be paid as a tax thereon, which roll, as thus corrected, is to be delivered to the receiver of taxes, under section 911. There is no provision in the charter requiring that all assessments should refer to the ward maps, as was the case of the charter of the old city of Brooklyn, and under which the case of May v. Traphagen, 139 N. Y. 478, 34 N. E. 1064, was decided; but it would appear that it was the intention to allow but one assessment to be made where one building was constructed upon several lots. The assessment was to be imposed upon such building and the land upon which it was erected, and, so far as the validity of an assessment for taxation was concerned, had no possible relation to the division of the lands upon the ward maps. That such assessment should be so made seems to be clearly contemplated by section 920 of the charter, which provides for an apportionment of a tax imposed upon several lots. It is there provided that, if a sum of money has been "or shall be taxed upon any lands or premises, any person or persons claiming any divided or undivided part thereof may pay such part of the sum of money so taxed as the comptroller shall deem to be just and equitable." The authority to review such assessment is given by section 906 of the charter, which allows a writ of certiorari on the verified petition of the party aggrieved, but only on the grounds which must be specified in such petition,— that the assessment is illegal, and giving the particulars of the alleged illegality. The petition in this case specifies as the ground of illegality that the commissioners of taxes and assessments did not enter or cause to be entered in detail in the said annual record (viz. that provided for by section 892 of the charter) the assessed valuation of this lot owned by the relator, or the value of such lot, but, on the contrary, wrongfully and unlawfully included the petitioners' real property with five other separate lots belonging to the other owners, and purported to value the whole of said six lots together at the sum of $320,000, and to assess the same against a certain firm, called Ludwig Bros., who were not the owners or occupants of said property. In answer to this allegation the return, which must be taken in this proceeding as true, alleges that this lot of the relator, together with the five other lots mentioned, was occupied entirely by one building, extending from West Thirteenth street through to West Fourteenth street, and for that reason it is impracticable to apportion the value of said building among the various parcels upon which it stood. Taking these two allegations as true, it would seem to follow that such an assessment, where one building was erected upon more than one lot, was not erroneous because there was included the whole parcel of land upon which the building was erected in one assessment, and the fact that it was assessed in the name of the wrong person did not make it void, under the provisions of section 894 of the charter.

The petitioner's argument is based upon section 899 of the charter, as contemplating an assessment of each individual lot by reference to the tax map, and that any other is invalid. But we think, on the contrary, that the charter contemplates an assessment on each individual house, building, or pier, as well as each lot, and, when a house or building stands on more than one lot, an assessment is not avoided because the whole house or building, with the land on which it is built, is assessed as one piece of property.

There is a point raised by the relator as to the method of proceeding. It appears to be claimed that the petition and return are to be treated as pleadings in an action; the burden of proof being upon each party who alleges a fact,—upon the petitioner, so far as the allegations of the petition are denied by the return, and upon the respondents where their return alleges a fact as the basis of their action. The cases cited to sustain that proposition were not questions as to matters of proof, but as to the form of the allegation in the petition; and as to the form of such an allegation it was held that the petition is in the nature of a pleading, and only conclusions of fact need be stated, and not the evidence necessary to support it. In re Corwin, 135 N. Y. 245, 32 N. E. 16. The proceeding under such a writ, however, is expressly regulated by the charter and the tax law. By section 906 of the charter, power is given to the supreme court to review the determination of the department by certiorari. The procedure upon this writ seems to be regulated by article 11 of the tax law. By section 250 the form of the petition is prescribed. By section 252 provision is made for the return to the writ. By section 253 it is provided that, if it should appear upon the return of such a writ that the assessment complained of was illegal or erroneous or unequal, the court may order the assessment to be stricken from the roll. Under this section it would appear that the court had no power to vacate the assessment unless it appeared by the return that it was illegal. The power is then given to the court upon the hearing, if it should appear that testimony was necessary for the proper disposition of the matter, to take evidence, or to appoint a referee to take such evidence; but, to justify the court in vacating the assessment, it must appear either by allegation of the petition and admitted by the return, or from facts set forth in the return, that the assessment was illegal, or from evidence taken by the court or by a referee that facts alleged in the petition and denied by the return are true. Here it appeared by the return that one building was assessed. The relator offered no evidence to show that this allegation was not true, or that by reason of any fact set forth in the petition the assessment was void, and we can see no reason why the assessment should be vacated.

My conclusion is that this order should be reversed, with costs and disbursements of this appeal, and the proceeding dismissed, with costs. All concur.