PEOPLE ex rel. CONEY ISLAND JOCKEY CLUB v. PURDY et al.

(Supreme Court, Appellate Division, Second Department. July 25, 1912.)

1. MUNICIPAL CORPORATIONS (§ 958*) — PROPERTY SUBJECT TO TAXATION — STATUTES—CONSTRUCTION.

Tax Law (Consol. Laws 1909, c. 60), defining taxable property and mode of taxation, covers the whole subject of taxation, and repeals the Revised Statutes and all acts affecting it, and repeals so much of Laws 1894, c. 449, annexing territory to the city of Brooklyn, as provides that for the purposes of taxation the real estate within the territory annexed shall be assessed at the value of the land for agricultural purposes, unless the same shall be divided into building lots, and the map filed, and a sale referring to such map is made.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2023–2037; Dec. Dig. § 958.*]

2. MUNICIPAL CORPORATIONS (§ 29*)—ANNEXATION OF TERRITORY—LEGISLATIVE POWER.

The Legislature may annex territory to a city, and may make concessions in the matter of taxation, and take away such concessions at any time without reference to the willingness or unwillingness of the inhabitants of the territory affected.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 66–75; Dec. Dig. § 29.*]

3. MUNICIPAL CORPORATIONS (§ 974*) — TAXATION — ASSESSMENT — REVIEW — PETITION.

Greater New York Charter (Laws 1901, c. 466) § 906, authorizing certiorari to review assessments on grounds specified therefor, and Tax Law (Consol. Laws 1909, c. 60) § 290, authorizing any person aggrieved by an assessment to present a petition stating the extent of the overvaluation, or the instances of inequalities complained of, prescribe the procedure for the review of assessments by persons aggrieved thereby, and a petition to review an assessment on real estate which alleges that the land is worth only a specified sum for agricultural purposes and that it is

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assessed at a larger sum given does not state overvaluation or inequality, and the petition must be dismissed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2083–2086; Dec. Dig. § 974.*]

Appeal from Special Term, Kings County.

Certiorari by the People, on the relation of the Coney Island Jockey Club, against Lawson Purdy and others, as Commissioners of Taxes and Assessments of the City of New York, to review an assessment on real estate. From an order granting relief, defendants appeal. Reversed, and motion to dismiss petition granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Curtis A. Peters, of New York City (Eugene Fay, of New York City, on the brief), for appellants.

John M. Bowers, of New York City, for respondent.

THOMAS, J.   The relator would review an assessment in 52 parcels of some 430 acres of land in the town of Gravesend, upon the ground that by statute (Laws 1894, c. 449, § 13) it is assessable only at its value for agricultural purposes, and that, aside from such direction, there is overvaluation and inequality. By the act of 1894 (section 13) it was provided:

"For the purposes of taxation the real estate included within the territory hereby annexed shall be assessed at the value of the land for agricultural purposes, unless the same shall have been at the time this act shall take effect or shall thereafter be divided up into building lots and a map thereof filed in the office of the register of deeds of the county of Kings, or in the office of the board of assessors of the city of Brooklyn, and a sale or sales referring to such map made or unless the same shall have been otherwise sold as a building lot or used as such."

[1] Was this provision repealed either by the Tax Law (chapter 908, Laws 1896 [now chapter 62, Laws 1909, chapter 60, Consolidated Laws]), or the Greater New York charter, taking effect January 1, 1909 (Laws 1897, c. 378, amended chapter 466, Laws 1901), or by both? The Tax Law or the charter are broad enough to include the land, provided it has the usual status of property subject to taxation, but the general directions for assessing in these acts are not more comprehensive than were the provisions for assessing in the Revised Statutes, in existence when the act of 1894 was passed. At that time such statutes required the assessment of property at its full value measured by a stated rule, but there were acts in effect amendatory, providing exemptions or modification, and among others was the Gravesend Act of 1894, limiting the general law so as to direct the assessment of lands in Gravesend at their value for agricultural purposes. The provision in the Revised Statutes ended when the Tax Law took effect; the new law by section 4 pointing out property that should be exempt. But the Gravesend Act did not exempt. It declared how the property should be valued. The sentiment favoring

urban enlargement resulted in the incorporation within the city of Brooklyn of the outlying and thinly populated territory, which had scant or infrequent need or capacities for the usual privileges, improvements, and protections of the city, save as it should from time to time by subdivision into lots come into the uses of residence or business. To gather this outlying domain into the city and force upon it urban characteristics, which it did not have, appealed to the state as incongruous or undesirable. Hence it was included for what it was in its general extent, naked land, approximating more nearly to agricultural uses, and assessors were commanded to regard it as such, unless the owner would otherwise adapt his land in the manner indicated by the statute. Did the Legislature after an intervening year, the territory having been bought in, capriciously reverse its policy, and disappoint those who had abided by the promise that the rural quality of the land for taxation be preserved? That it could, by sheer force, have done so, should not be doubted, but the act would have carried to the inhabitants of Gravesend some just sense of injury to them, and of injustice on the part of the state; for in the meantime the nature of the locality could have little changed. So the appellant would not infer intention to repeal the act of 1894 from the mere transfer of the law of assessment from one statute to another, whereby there was no repeal of the Gravesend Act, unless by implication. To this it may be answered arguendo that it was contrary to the general policy of the state to limit for the purposes of taxation land to its value for agricultural purposes, where its relation to population, and the demand for it for other uses, gave it a much greater value, which was its actual value existing irrespective of its incorporation into a city. But, whatever the force of this position, the question of justice or policy was for legislative determination, and it would, I think, not be unreasonable to consider whether, having once decided, the Legislature intentionally so soon recalled its decision. But one insuperable difficulty in the way of such consideration is that it has been decided that the Tax Law was intended to cover the whole subject, and hence has swept away the Revised Statutes and all acts affecting it, according to accepted rules of construction. In Matter of Huntington, 168 N. Y. 399, 61 N. E. 643, and Pratt Institute v. City of New York, 183 N. Y. 151, 75 N. E. 1119, 5 Ann. Cas. 198. The language of the opinions in the two cases last cited covers the case at bar, and doubtless interprets the general breadth of the Tax Law. But that there is exception appears in the People ex rel. Roosevelt Hospital v. Raymond, 194 N. Y. 189, 195, 87 N. E. 90, 92, where it is said:

"The court was asserting a general doctrine in the opinion and the broad language used finds its proper application, where the facts, upon which exemption from taxation is claimed, do not disclose a transaction with the state of such a nature as to repeal the presumption of a legislative purpose, subsequently, to repeal the prior grant of exemption by passing the General Tax Law. * * * The question before us is whether, when we regard the circumstances under which this particular charter was enacted, and when we consider the manner in which the Legislature had induced the transfer of the testator's estate towards the endowment of this corporation,

we shall hold that the presumption of the legislative intent to repeal shall, nevertheless, obtain in its case. * * * I do not think that we should presume that the Legislature intended to commit so gross a·breach of faith."

The decision is expressive of a high obligation in the interpretation of statutes. But it is not applicable to the case at bar.

[2] The town of Gravesend did not voluntarily contribute its territory or yield rights. The Legislature had full power to incorporate it, willing or unwilling, and, if the state justly or unjustly made concession to the town in the matter of taxation, it ·could take away at any time what as an act of grace and without ·consideration it had given. The matter is purely political, and in that way the people of the town only could consider, approve, or reprehend it. The other objections to the petition are tenable. There is no sufficient statement of overvaluation or of inequality, save as above discussed.

[3] The statement that the land is worth only $160,000 for agricultural purposes, and that it is assessed at the large sum given, assumes that the land has no value for other purposes. I fail to find given instances indicating inequality of assessment as required by the Tax Law. It is urged that the pleading is governed by the Greater New York charter (section 906). But the Tax Law (article 13, § 290) is quite consistent with that section of the charter, to which the aggrieved person must look for procedure, and both statutes contribute harmoniously to the remedy. People ex rel. Lazarus v. Feitner, 65 App. Div. 318, 73 N. Y. Supp. 97, affirmed 169 N. Y. 604, 62 N. E. 1099; People ex rel. Thomson v. Feitner, 168 N. Y. 441, 61 N. E. 763; People ex rel. Equitable Gaslight Co. v. Barker, 81 Hun, 22, 30 N. Y. Supp. 586.

The order should be reversed, with $10 costs and disbursements, and the motion to dismiss the writ granted, with costs.

HIRSCHBERG, CARR, and WOODWARD, JJ., concur. JENKS, P. J., not voting.