BROOKLYN CHILDREN'S AID SOCIETY v. PRENDERGAST, Comptroller, et al.

(Supreme Court, Appellate Division, Second Department. February 5, 1915.)

1. MUNICIPAL CORPORATIONS (§ 434*)—EXEMPTION FROM LOCAL ASSESSMENT— "CHARITABLE CORPORATION."

    Under Laws 1878, c. 364, § 1, as amended by Laws 1886, c. 622, exempting real property in the county of Kings, owned by any hospital, orphan asylum, house of industry, or other charitable corporation or society engaged in the care, support, or education of the sick, the infirm, or the destitute, from assessments for local improvements, a society for the care and support of destitute children, owning and maintaining a hospital with 200 beds for the care of sick babies, brought there for treatment from the borough of Brooklyn, and which was almost wholly supported by charitable donations, was a "charitable corporation," having

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for its object the care of the sick and the destitute, and as such exempt from assessments.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1045–1050; Dec. Dig. § 434.*

For other definitions, see Words and Phrases, Second Series, Charitable Corporation.]

2. MANDAMUS (§ 96*)—ENFORCEMENT OF EXEMPTION.

Where a charitable corporation is entitled to relief from an assessment for local improvements, mandamus is the proper remedy.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 202, 204; Dec. Dig. § 96.*]

3. STATUTES (§ 159*)—REPEAL BY IMPLICATION.

Repeal by implication results from some enactment, the terms and operation of which cannot be harmonized with the terms and necessary effect of an earlier statute; but a repeal by implication is not favored, as it is a reasonable presumption that the Legislature did not intend to keep contradictory enactments in the statute, or to repeal a law without expressing an intention to do so, so that repeal by implication is not to be adopted, unless it is inevitable.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 229; Dec. Dig. § 159.*]

4. MUNICIPAL CORPORATIONS (§ 408*)—EXEMPTIONS—STATUTES—REPEAL.

Laws 1878, c. 364, § 1, as amended by Laws 1886, c. 622, exempting real property in the county of Kings, owned by a charitable corporation or society, from assessments for local improvements, was not repealed by Greater New York Charter (Laws 1901, c. 466) §§ 904, 905, relating to exemptions from liability to taxation, since that is not the same as liability to assessment for local improvements, which are not necessarily included in an exemption from taxation, and since section 905 declares that nothing in the chapter should affect any existing statutory exemptions from taxation of property within Greater New York.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1005, 1006, 1183; Dec. Dig. § 408.*]

5. MUNICIPAL CORPORATIONS (§ 408*)—EXEMPTIONS—REPEAL OF STATUTE—INCONSISTENCY.

Such exemption statute was not repealed by Greater New York Charter, § 958, providing that no suit or action shall be commenced to vacate any assessment but that owners shall be confined to their remedies under such title, by section 959, providing that where fraud or substantial error is alleged to have been committed in assessment proceedings the party aggrieved may apply to the Supreme Court for relief, by section 960, forbidding the vacation of an assessment for certain specified irregularities, by section 962, providing that no court shall vacate any assessment, void or voidable, except to reduce it to the extent it was increased by fraud or substantial error, nor by section 1017, as amended by Laws 1908, c. 490, § 6, providing that all assessments for local improvements shall "continue" to be a preferred lien until paid, since those sections relate to cases where the assessing body, having jurisdiction of the property, has fraudulently or irregularly imposed a greater assessment than it should bear, since that may not "continue" to be which never has been, and since the acts, read together, are not inconsistent.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1005, 1006, 1183; Dec. Dig. § 408.*]

6. MUNICIPAL CORPORATIONS (§ 408*)—EXEMPTION FROM LOCAL ASSESSMENT—IMPLIED REPEAL OF STATUTE.

Such special exemption was not impliedly repealed by the General Tax Law (Consol. Laws, c. 60), entitled "An act in relation to taxation," not assuming to deal with assessments for local improvements; nor by Greater New York Charter, § 1610, providing that all acts of a "general

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and permanent character" relating to the city of New York consistent with the charter shall extend to the city as chartered therein and apply to the whole city, in the absence of any provision affecting the former city of a "general and permanent character" inconsistent therewith; nor by Laws 1904, c. 689, declaring that real estate owned by any religious corporation in the city of New York shall be exempt from such assessments, since a religious corporation was not enumerated in the special acts; nor by Greater New York Charter, § 221a, as amended by Laws 1909, c. 388, conferring upon the commissioners of the sinking fund power to annul all assessments, etc., which may become a lien against any real estate owned by any corporation, since it is doubtful whether such act was retroactive, since the question of taxation and of exemptions from local assessments is peculiarly legislative and may not be delegated to administrative officers, and since the later act would seem to be limited to cases where an actual lien existed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1005, 1006, 1183; Dec. Dig. § 408.*]

Appeal from Special Term, Kings County.

Mandamus by the Brooklyn Children's Aid Society against William A. Prendergast, as Comptroller of the City of New York, and another. From an order granting petitioner's motion for a peremptory writ, defendants appeal. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and RICH, JJ.

Frederick H. Van Houten, of New York City (Thomas F. Magner, of Brooklyn, on the brief), for appellants.

William G. Cooke, of New York City (Howard O. Wood, of New York City, on the brief), for respondent.

BURR, J. In 1878 the Legislature passed an act discharging from all assessments for local improvements in the city of Brooklyn certain classes of charitable and benevolent institutions. Laws 1878, c. 364. In 1886 an amendatory act was passed. Laws 1886, c. 622. By this act, section 1 of the former act was amended so as to read as follows:

"The real property situate in the county of Kings, now owned, or which hereafter may be owned by any hospital, orphan asylum, house of industry or other charitable corporation, society or· institution, which has for its object the reformation of offenders, the care, support or education of the sick, the infirm, the destitute, the deaf, the dumb or the blind, shall be and hereby is declared discharged and exempt from all assessments laid or made for local improvements, and sales thereunder, and from all such assessments hereafter so long as the same shall be owned by any such corporation, society or institution aforesaid, and whenever a sale and conveyance thereof shall be made to any person or corporation other than those mentioned in this act, thereupon the real estate so sold and conveyed shall be thereafter subject to assessment in the same manner as other real estate situate in the county of Kings."

The constitutionality of the latter act was sustained. Dyker Meadow Land Co. v. Cook, 3 App. Div. 164, 38 N. Y. Supp. 222, affirmed 159 N. Y. 6, 53 N. E. 690. When the act entitled "An act to revise and combine in a single act all existing special and local laws affecting public interests in the city of Brooklyn" was passed (Laws 1888, c. 583), there was contained therein a section (section 33 of title 22)

which, in its terms, was identical with the act of 1878, as amended in 1886, except that there was also included therein a provision for exemption from taxation. It was also provided in the revision act that it—

"is hereby declared to be a public act, and all local and special acts passed prior to January first, eighteen hundred and eighty-eight, relating to the corporation of 'the city of Brooklyn,' designated in section one of title one of this act or to the administration of the property or affairs of said corporation [with certain exceptions, among which is neither of the special acts above referred to], are hereby repealed." Laws 1888, c. 583, title 22, § 35.

It is a circumstance to be noted that the act of 1878, as amended in 1886, relates, *not* to the city of Brooklyn, but to the county of Kings. The section in question of the revising and consolidating act in express words relates to territory not within the boundaries of the city. The city of Brooklyn and the county of Kings were not then coterminous. It is not necessary to decide whether the revision act expressly, or by implication, repealed the whole of the former statutes, or whether it fixed a rule which should be operative in so much of the county of Kings as was within the city of Brooklyn, and to that extent repealed the same, leaving the acts still operative as to the residue of the county, or whether it had no effect whatever upon the special acts hereinbefore referred to. When the attempt was made to impose the assessments here considered, with one exception the premises in question were within the territorial limits of the city of New York, and had been within the territorial limits both of the city of Brooklyn and the county of Kings. Unless subsequently repealed, one or the other of these acts is in force. Either is sufficient for petitioner's purpose.

[1, 2] If these acts still exist, petitioner is within the scope thereof. It appears that it has not only for its object the care and support of destitute children, but also owns and maintains a hospital with 200 beds for the care of sick babies, brought there for treatment from the borough of Brooklyn, and that it is almost wholly supported by charitable donations. We think that, within the language of these acts, it is a "charitable corporation" which has for its object the care of the sick and the destitute. If entitled to relief, mandamus is the proper remedy. Greater New York Charter, § 958; Matter of Montefiore Home v. Prendergast, 159 App. Div. 644, 144 N. Y. Supp. 953, affirmed 211 N. Y. 549, 105 N. E. 1090. We have been unable to find any subsequent act which, by express reference thereto, repeals either of these exempting statutes.

[3] We understand the appellant to contend that by reason of the provisions of other and subsequent statutes, and particularly perforce certain sections of the Greater New York Charter, said acts have been repealed by necessary implication. Repeal by implication results from some enactment, the terms and operation of which cannot be harmonized with the terms and necessary effect of an earlier statute. But repeal by implication is not favored. "It is a reasonable presumption that the Legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so.

Such an interpretation, therefore, is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention." Endlich on the Interpretation of Statutes, § 210; Matter of Tiffany, 170 N. Y. 455, 72 N. E. 512; Grimmer v. Tenement House Department, 204 N. Y. 370, 97 N. E. 884.

[4] With these rules of construction in mind, let us examine the various sections of the Greater New York Charter which relate to the same or similar subject-matter. Chapter 17 of this act (sections 884 to 1054) is entitled "Taxes and Assessments." It is subdivided into four titles. Title 1 creates the department of taxes and assessments and defines its powers and duties. As part of that title, sections 904 and 905 relate to exemptions; but each of these sections refers to exemptions from liability to taxation. This is not the same as liability to assessment for a local improvement, and the latter is not necessarily included in the former. Matter of St. Joseph's Asylum, 69 N. Y. 353; Roosevelt Hospital v. Mayor, etc., of N. Y., 84 N. Y. 108. But in section 905 appears a clear declaration of legislative intent not to make the provision of chapter 18 a full and comprehensive scheme with regard to exemptions even from taxation, for by that section it is provided that:

"Nothing in this chapter shall affect any existing and valid exemptions from taxation heretofore created by law respecting any property, real or personal, within the limits of the city of New York, as constituted by this act."

Title 2 of said chapter specifically relates to assessments for local improvements, other than those confirmed by a court of record. The sections of that title (942 to 954, inclusive), provide a method of imposing assessments for certain local improvements, but contain no provisions relating to exemptions of real property from assessment therefor.

[5] Title 3 is entitled "Vacating and Modifying Assessments for Local Improvements Other than Those Confirmed by a Court of Record." In section 958 there is a provision that:

"No suit or action in the nature of a bill of equity or otherwise shall be commenced for the vacation of any assessment in said city, or to remove a cloud upon title; but owners of property shall be confined to their remedies in such cases to the proceedings under this title."

Section 959 provides that:

"If in proceedings relative to any assessment or assessments for local improvements, or in the proceedings to collect the same, any fraud or substantial error shall be alleged to have been committed, the party aggrieved thereby may apply to a justice of the Supreme Court" for relief.

It continues:

"If, upon such hearing, it shall appear that the alleged fraud or substantial error, other than such errors as are specified in the next section has been committed as provided in this title, the said assessment shall be vacated or modified, and the lien created thereby, or by any subsequent proceedings, shall cease."

Section 960 provides that no assessment shall be vacated and set aside by reason of certain specified irregularities. We think it quite

clear that these sections, read together, relate to cases where the property in question was within the jurisdiction of the board of assessors, but either fraud or some substantial error, other than those errors excepted, has been committed, and the lien of such assessment is unjust and inequitable. See Jex v. Mayor, etc., of New York, 103 N. Y. 536, 9 N. E. 39; Matter of City of New York, 114 App. Div. 519, 100 N. Y. Supp. 140. It was said in the Jex Case, which was brought to recover the amount of a void assessment paid under legal duress:

"The assessment having been imposed without jurisdiction, it was not essential that it should be first vacated in order to enable the plaintiffs to recover back the money paid thereon. A void assessment, like a void judgment, is a nullity."

In the Matter of City of New York, supra, the court, speaking of sections 958, 959, and 962 of the Charter, say:

"That remedy does not extend to assessments that are wholly void either where their invalidity appears upon the face of the assessment proceedings or by matters dehors the record."

Section 960 also contains this provision:

That "all property in said city benefited by any improvement or other public work already completed, or now being made or performed, and hereafter made, done, or performed [with two exceptions not here applicable], shall be liable to assessment for such improvement or work, and all assessments for any such improvement or other public work shall be valid and binding notwithstanding any such omission, irregularity, defect in authority, or technicality."

We think, again, that, following the construction heretofore put upon this and the accompanying sections, their provisions must be limited to cases where jurisdiction to impose an assessment exists. People ex rel. Davidson v. Gilon, 126 N. Y. 147, 156, 27 N. E. 282. In considering section 903 of the Consolidation Act (Laws 1882, c. 410), almost identical in language with section 962 of the Greater New York Charter, to the effect that "no court shall vacate or reduce any assessment in fact or apparent, * * * whether void or voidable, on any property for any local improvement hereafter completed otherwise than to reduce any such assessment" to what would be the fair value of any actual local improvement of that character, the court held that this did not take away, nor even qualify, by implication, the common-law right of a property owner to receive back the amount of an illegal assessment paid by him under circumstances which amounted to legal compulsion. Poth v. Mayor, etc., 151 N. Y. 16, 45 N. E. 372. If it did not take away the right to exemption from liability resting upon common law, why should it take away a right resting upon statute? It would certainly be an unusual way of conferring jurisdiction upon a board of assessors over property which otherwise is beyond the influence of its action. We think that the language of all of these sections may be fairly confined to cases where the assessing body having jurisdiction of the subject-matter, to wit, the property in question, has fraudulently or by irregular action imposed upon it a greater burden than it should equitably bear, and in which the property owner seeks redress by affirmative action.

The same reasoning applies to the provisions of section 1017 of the Greater New York Charter, title 5, as amended by Laws of 1908, chapter 490, section 6, to the effect that:

"All taxes and all assessments for local improvements * * * which may, in the city of New York, as by this act constituted, hereafter be laid or may have heretofore been laid, upon any real estate now in said city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges."

That may not "continue" to be which never has been. Title 4 specifically relates to proceedings for opening streets and parks, and the acquisition of title in fee, or an easement therein, or in lands for public purposes not elsewhere provided for; and title 5 specifically relates to the sale of lands for taxes, assessments, and water rates. With the exception heretofore noted, we think that there is nothing in either of these titles which requires consideration. Taking the act as a whole, we find a statute, passed subsequent to special local acts creating exemptions, which, while in part it relates to procedure in relation to assessments for local improvements, is entirely silent upon the subject of exemptions from liability therefor. There is no inconsistency between this and the prior acts. If either of the special acts had been incorporated in, or added to and made a part of, the title of the charter relating to such assessments, there would be no inconsistency between the different parts of said title. Such inconsistency cannot arise, because the legislative will is expressed in separate acts. Read together, they present a practically harmonious system. Separated, each is incomplete.

[6] Neither does the General Tax Law (Consolidated Laws, c. 60 [Laws 1909, c. 62]) impliedly repeal these exemptions. That act is entitled "An act in relation to taxation." It has to do with proceedings to impose a general tax upon all taxable property, and to the mode of assessment for that purpose. It relates also to taxes on corporations, and to those on taxable transfers, and to taxes on mortgages and on stock transfers. But it does not assume to deal with assessments for local improvements. Granting that the purpose of this act was to cover the whole system of taxation and to do away with all previous statutes relating thereto (People ex rel. Coney Island Jockey Club v. Purdy, 152 App. Div. 175, 136 N. Y. Supp. 667, affirmed 207 N. Y. 695, 101 N. E. 1116), it has no application to the present situation.

Neither do the provisions of section 1610 of the Revised Charter so conflict with the provisions of these exemption laws as to cause them to fall. This section is as follows:

"All the provisions of all acts of the Legislature of the state of New York, including said Consolidation Act of eighteen hundred and eighty-two, of a general and permanent character, relating to the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, in force at the time this act goes into effect, which are consistent with this act and its purposes, and which are not revised and included in or the subject-matter thereof covered by this act, are hereby extended to the city of New York as herein constituted, so far as they are consistent with this act, and are not in their nature locally inapplicable to other portions of the city than the corporation heretofore known as the mayor, aldermen and

commonalty of the city of New York. And the provisions of law thus extended to the city of New York as herein constituted shall apply to said city throughout its whole extent, anything to the contrary notwithstanding contained in the charter of any of the municipal or public corporations or laws relating thereto, which are by this act united and consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York."

It may have been the purpose of the Legislature, by this act, to extend over the entire territory included within the boundaries of the greater city such acts as affected the former city of New York and which fulfilled the various conditions in said section expressed. To fall within it, it must first appear that the act preserved is one which originally affected the former city of New York, and which is *general* and permanent in character. We do not find any provision of the Consolidation Act, nor has our attention been called to any act affecting the former city of a *general and permanent character* which deals with the subject of exemptions from assessments for local improvements. To effect a repeal of the special acts under which petitioner claims exemption, it would be necessary to find such acts, and then to find some irreconcilable inconsistencies between them and the special acts in question.

Neither do we think that the act of 1904 (Laws 1904, c. 689), which provided that "the real estate owned by any religious corporation located in the city of New York, as now constituted, actually dedicated and used by such corporation exclusively as a place of public worship, shall be exempt from all assessments for public improvements which are now levied and assessed against such real estate," repealed such acts. A corporation which is solely a religious corporation is not among the institutions enumerated in the special acts. Because the Legislature chose to add to the corporations therein named still another class of corporations, and this not by a general act dealing with the entire subject of exemptions, but by a special and local act relating only to one particular class, it cannot be successfully argued that it intended thereby to limit exemptions to the corporations specified in the latter act, and to repeal all laws conferring exemptions upon other classes of corporations. To so construe the later act would be to make it a general and comprehensive act instead of a special and local one. But, unless it is the former, there is no inconsistency.

Finally, it is contended that by an amendment to the Greater New York Charter, passed in 1909 (Laws 1909, c. 388), and known as section 221a, the subject of exemptions from local assessments is comprehensively treated, and the power to grant or withhold such exemption is conferred upon the commissioners of the sinking fund. The section reads as follows:

"The commissioners of the sinking fund of the city of New York, upon the written certificate of the comptroller of said city approving the same, with whom such application for relief under this section shall be filed, may in their discretion and upon such terms as they may deem proper, by a unanimous vote cancel and annul all taxes, assessments and Croton water rents and sales to said city of any or all of the same which now are or may hereafter become a lien against any real estate owned by any corporation, entitled to exemption of such real estate owned by it from local taxation

under article one, section four, subdivision seven of the tax law, which was the actual owner of such real estate and entitled to such exemption, during the time when the taxes, assessments or Croton water rents from which it asks relief accrued and became liens thereupon."

It is at least doubtful whether such act would have any retroactive force, so as to make assessments upon property for local improvements, which have been hitherto void because of lack of jurisdiction of the property affected thereby, so far valid liens that the determination whether they should be canceled or not should rest in the discretion of the officials named. To so construe the act would give rise to serious objections to its validity. The question of taxation, and what property is liable therefor, and of exemption both from taxation and also from local assessments, is peculiarly legislative in character, and may not be delegated to administrative officers. Dyker Meadow Land Co. v. Cook, supra; Gautier v. Ditmar, 144 App. Div. 721, 129 N. Y. Supp. 834, affirmed 204 N. Y. 20, 97 N. E. 464, Ann. Cas. 1913C, 960.

Further, that this act was not intended to be a substitute for all previously existing statutes on the subject of exemptions from liability for local assessments is indicated, we think, by the fact that in 1911 (Laws 1911, c. 686) a previously existing statute (Laws 1897, c. 696) relating to exemptions from payment of water rents, was amended. This was legislative recognition of the survival of the act of 1897. But, if that survived, why not also the special acts under which petitioner claims? It may be that section 221a refers to corporations which, while exempt from local taxation, are not exempt from taxation for state purposes or from assessments for local improvements and from water rents, against whose property such taxes, assessments, and water rents have been imposed. The language of the act authorizes the persons named therein to—

"cancel and annul all taxes, assessments and Croton water rents and sales to said city * * * which now are or may hereafter become a lien against any real estate owned by any corporation."

This act would seem to be limited to cases where an actual lien existed. A tax or assessment may become an apparent, it can never be a real, lien upon property exempted from liability therefor. It may be conceded that there is some difficulty in the construction, for the statute assumes to deal with taxes imposed upon property owned by a corporation entitled to exemption of such real estate owned by it for local taxation. Whether this language could be treated as applying to state, as distinguished from local, taxation, and whether such delegation of power respecting the same is permissible, and what the actual meaning of the statute in this respect is, we need not decide. It is enough for our purpose to hold, as we do, that the legislative intent to repeal all previously existing statutes upon the subject of exemptions from liability for local assessments, and to substitute this act therefor, does not clearly appear.

The order must be affirmed, with costs and disbursements. All concur.