In the Matter of the Application of THE PEOPLE OF THE
   STATE OF NEW YORK ex rel. THE CAYUGA NATION OF
   INDIANS et al., Respondents, v. COMMISSIONERS OF THE
   LAND OFFICE, Appellants.

Indians — statutory construction — statute (L. 1909, ch. 255)
empowering commissioners of land office to adjust claims of
Cayuga Nation of Indians mandatory, not permissive, only — such
statute not invalid under N. Y. State Constitution (Art. 3, § 19.)

1. It is a rule of statutory construction that when the act to be
done concerns the public interest, or the rights of third persons,
permissive words conferring power, or authority, upon public
officers, or bodies, will be construed as mandatory.

2. The commissioners of the land office were, by chapter 255 of the Laws of 1909, "empowered to adjust the claim embodied in the memorial of the Cayuga Nation of Indians, resident in the state of New York," on a basis therein set out. On review of the history of the claim and legislation thereon, *held*, that the act imposed upon the commissioners of the land office a duty to exercise the power conferred, and however permissive in form the words of the statute, they conveyed the legislative command, not to pass upon the legality of the claim, but to settle it at a just sum, and the board may be compelled to so act by mandamus.

3. The prohibition of the Constitution (Art. 3, § 19) has reference to claims made against the state in behalf of private interests, as distinguished from claims of a public character. The claim in question is of a public nature made by an independent tribal organization, existing within the state under treaty provisions, and this prohibition is not applicable thereto.

*Matter of People ex rel. Cayuga Nation* v. *Comrs. of Land Office,* 152 App. Div. 543, affirmed.

(Argued November 19, 1912; decided December 31, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 17, 1912, which reversed an order of Special Term denying a motion for a peremptory writ of mandamus to compel the commissioners of the land office to adjust a claim of the Cayuga Nation of Indians and granted said motion.

The facts, so far as material, are stated in the opinion.

*Thomas Carmody, Attorney-General* (*Wilber W. Chambers* of counsel), for appellants. The provisions of chapter 255, Laws of 1909, were not mandatory. (*People ex rel. Tracy* v. *Woodruff,* 54 App. Div. 1; *People ex rel. Underhill* v. *Saxton,* 15 App. Div. 263.) The land board acted judicially in determining that the Cayuga Indians' claim could only be legally adjusted by its rejection, and mandamus will not lie. (*People ex rel. Harris* v. *Comrs. of Land Office,* 149 N. Y. 26; *People ex rel. Myers* v. *Barnes,* 114 N. Y. 317; *People ex rel.*

*Hammond* v. *Leonard*, 74 N. Y. 445; *People ex rel. Millard* v. *Chapin*, 104 N. Y. 96; *People ex rel. Grannis* v. *Roberts*, 163 N. Y. 70.) The legislature had no power to audit this claim and consequently none to require its approval by the land board and governor. (*Cole* v. *State*, 102 N. Y. 48; *O'Hara* v. *State*, 112 N. Y. 146; *Swift* v. *State*, 89 N. Y. 52; *Roberts* v. *State*, 160 N. Y. 217; *Cayuga Nation* v. *State*, 99 N. Y. 235; *Lewis* v. *State*, 96 N. Y. 71; *Splittorf* v. *State*, 108 N. Y. 205; *Dimmock* v. *State*, 11 Ct. Cl. Rep. 24; *Freer* v. *State*, 11 Ct. Cl. Rep. 9.)

*Charles Van Voorhis* for respondents. The act is mandatory. The history of the procedure which led to this enactment clearly shows that the legislative intent requires the commissioners of the land office to make a reasonable and honest effort to negotiate a settlement of the claim within the limitations of the amount fixed by the act. There is no discretion in the land board except as to the amount of settlement. (*People ex rel. Kemmler* v. *Durston*, 119 N. Y. 578; *People ex rel.* v. *Common Council*, 140 N. Y. 300; *People ex rel. City of Lockport* v. *Bd. Suprs.*, 49 Hun, 32; *People ex rel.* v. *Suprs. of Livingston County*, 68 N. Y. 114; *People* v. *Common Council of Syracuse*, 78 N. Y. 56; *Mayor* v. *Fuge*, 3 Hill, 612; *Lower* v. *U. S.*, 91 U. S. 536; *Burns* v. *Dist. Col.*, 91 U. S. 540; *People* v. *Draper*, 15 N. Y. 545; *Waterloo W. M. Co.* v. *Shanahan*, 128 N. Y. 358; *People ex rel.* v. *Albertson*, 55 N. Y. 54; *Matter of N. Y. El. Ry. Co.*, 70 N. Y. 351; *Matter of Kemmler* v. *Durston*, 119 N. Y. 578.) Mandamus will lie to compel the commissioners of the land office to exercise the power conferred upon them by the legislature in this enactment. (*People ex rel. Harris* v. *Comrs. of Land Office*, 149 N. Y. 26; *People ex rel. Dady* v. *Prendergast*, 144 App. Div. 308; 203 N. Y. 1; *Matter of Kane* v. *McClellan*, 110 App. Div. 44; *People ex rel. Schau* v. *McWil-*

*liams,* 185 N. Y. 92; *Baird* v. *Bd. of Supervisors,* 138 N. Y. 95.)

GRAY, J. This application was made in behalf of the Cayuga Nation of Indians, resident in this state, for a peremptory writ of mandamus, which should require the commissioners of the land office "at once to take steps towards a settlement of the claim of the Cayuga Nation of Indians, resident in the State of New York," under the provisions of chapter 255 of the Laws of 1909. The writ was refused at the Special Term of the Supreme Court; but, on appeal to the Appellate Division, in the third judicial department, that court reversed the order below and granted the application.

Chapter 255 of the Laws of 1909 presents the question upon this appeal whether its provisions are mandatory, as is the contention in behalf of the Cayuga Nation of Indians; or whether, as the appellants argue, those provisions were such as to invest them with discretionary powers and, therefore, were directory merely. The following are the provisions of the act. "Section 1. The commissioners of the land office are hereby empowered to adjust the claim embodied in the memorial of the Cayuga Nation of Indians, resident in the State of the New York, bearing date February 27th, 1906, and presented to said commissioners, by entering into an agreement with said Cayuga Nation of Indians, resident in the State of New York, for the settlement of the said claim, on a basis not exceeding the sum of $247,609.33, including interest on such sum from the day of the presentation of said memorial * * * to the day of settlement. The amount of such settlement shall be retained in the treasury of the state, in trust for the said Cayuga Nation, and annual interest only on such sum at the rate of five per centum per annum shall be paid by the state to said Cayuga nation, except that such principal sum may be chargeable with the expense of said Cayuga nation in the

46   People ex rel. Cayuga Nation *v.* Land Comrs.

[207 N. Y.]          Opinion, per Gray, J.          [Dec.,

making, prosecution and settlement of said claim.   Such settlement shall be subject to the approval of the governor of this state." The second section of the act provides that, " if settlement of the claim shall be reached," the commissioners were to investigate and report to the legislature whether a lease, or purchase, could be procured from the Seneca Nation of Indians of adequate lands for the use and occupation of the Cayuga Nation by the use of sufficient of the principal sum aforesaid.

This application was made in 1911, after the, then, commissioners of the land office had refused to entertain the claim of the Cayuga Nation upon the two grounds, that there was no legal basis for it and that there was nothing from which to determine that the Indians had suffered any damage.   This conclusion of the commissioners, it will be observed, is equivalent to a judicial expression of opinion, as upon a consideration of the merits of the claim; which was not the sort of action the statute required of them.   It would seem to be clear from the language of the enactment that no power was conferred to pass upon the legal liability of the state and that the legislature intended that the commisioners of the land office should act in the matter by entering into an agreement for the payment of some sum to the Indians.   The commissioners were " to adjust the claim   *   *   *   *   *by entering into an agreement for the settlement of the said claim on a basis not exceeding the sum of $247,609.33," and "the amount of such settlement shall be retained in the treasury of the state in trust* " for the payment to the nation of interest thereon, at the rate of five per cent. This language indicates a legislative admission of the claim of the Cayuga Nation and the intent that the commissioners of the land office should settle it by agreeing upon some amount.

If we consider the enactment of the legislature in the light of the historical facts relating to this claim, I think that the mandatory character of the statute becomes unques-

tionable.   The memorial, to which the statute refers, was filed by the Cayuga Nation in 1906 and it presented a claim upon a transaction had with the state in the year 1795.   After the conclusion of the Revolutionary war and the making of treaties of peace with the Indians by the United States and by the state of New York, under an act of the legislature of the state, passed in 1795, a commission was appointed to make such arrangements with certain tribes, of which the Cayuga Nation was one, "relative to the lands appropriated to their use, as may tend to promote the interests of the said Indians and to preserve in them confidence in the justice of the state," etc.   The commission was empowered to purchase from them the residue of such lands as were not in individual occupancy, by the payment of annuities; provided such annuities should "not exceed six per cent on the principal sum, which would arise from the sale of such residue at four shillings per acre."   The act, further, provided that the surveyor-general should resell such lands at public auction at not less than sixteen shillings per acre.   All the lands of the Cayuga Indians were thus acquired by the state at four shillings per acre and, shortly thereafter, were resold at sixteen shillings per acre; realizing to the state, above what it had paid to the Indians, the sum of $247,609.33.   In 1853, the Cayuga Nation of Indians first presented a memorial to the legislature, claiming, in substance, that the profit which the state had made out of its transaction with the Indians, who were its wards, should be appropriated for their benefit.   From time to time thereafter, a similar claim was presented to the legislature, and always without success, until the passage of the act of 1909, now in question.   The proceedings, which followed upon the filing of the present memorial, in 1906, and which resulted in that act, should be noted.   After the filing with the commissioners of the land office, they were advised that they were without jurisdiction to entertain the memorial and, in consequence,

an act was passed by the legislature upon the subject in
1907. (Laws 1907, ch. 42.) By that act the commis-
sioners were empowered to hear the memorial and to
investigate the claim. Subsequently, they appointed Mr.
Joseph A. Lawson, an attorney at law, as their agent to
make an investigation; who made a report to them. In
this report, he says "that the Cayuga Nation of Indians,
resident in the state of New York, has no claim to the
said sum of $247,609.33 * * * enforceable at law or in
equity in any of the tribunals of this state, and that said
sum of $247,609.33 is in no sense a measure of damages
sustained by said Cayuga Nation by reason of said pur-
chase and sale as aforesaid. * * * There rests a
moral obligation upon the People of the state of New
York to make further provision for the support and main-
tenance of the Cayuga Nation, based upon the considera-
tion of, and with reference to, said sum of $247,609.33 as
the profits realized by the state from the sale of lands
heretofore belonging to said nation and made possible by
reason of the superior knowledge, ability and position of
said state in its negotiations with said Cayuga Nation in
consequence of the ignorance, helplessness and dependence
of such nation." The passage of an act by the legislature
was recommended in the report, which Mr. Lawson drew
and which is of the same purport as the act now in ques-
tion. The commissioners adopted the report and the pro-
posed act was introduced in the legislature, upon its basis,
in the session of 1909 and, having been passed, was
approved by the governor. After its passage the, then,
commissioners appointed a committee, who met with the
chiefs of the Cayuga Nation and submitted a report to
the board, recommending that the claim be settled on the
terms set forth in a form of treaty, or settlement, accom-
panying. The report was adopted. The proposed treaty,
or settlement, provided for the payment by the state of
the sum of $247,609.33, with interest at the rate of five
per cent thereon from the filing of the memorial, in sat-

isfaction of the claim of the Cayuga Nation, and contained provisions for the payment of the expenses out of the sum and that the remainder should be retained in the treasury for the purpose of thereafter distributing an annuity at the rate of five per cent on the principal sum. Upon receiving the report of the commissioners, the governor of the state, in 1910, transmitted the matter back to the commissioners, stating that the attorney-general had advised him that the claim was without legal basis, although the legislature had power to settle it, and that there were some facts in connection with the claim which had not been taken into consideration by the commissioners. Thereafter, the commissioners, then in office, took no further action in the matter, other than, upon the last day of the year, 1910, to recommend that the incoming commissioners continue the investigation. In the year 1911, the commissioners, having referred the matter to the standing committee, adopted its report that the claim of the Indians should be denied, as without any legal basis.

It will be apparent from this review of the history of the claim, and of the proceedings which have been taken upon it, that it was, at all times, rested upon a moral obligation of the state to appropriate to the benefit of the Indians the profits that it had made from the purchase of their lands. The claim had been reported upon to the legislature by the commissioners as one that was not enforceable at law, but which constituted a moral obligation on the part of the state, and it was in that view of the matter that the act of 1909 was passed. The enactment of the law was proposed by the commissioners upon the very assumption that there was no legal claim and when the legislature enacted the proposed law, it could only have been intended as a command to the commissioners of the land office to agree with the Indians upon a settlement. The argument of the attorney-general, that the words of this statute, being permissive in form, are to be construed

4

50  People ex rel. Cayuga Nation *v.* Land Comrs.

.[207 N. Y.]          Opinion, per Gray, J.          [Dec.,

as directory, only, and leave the tribunal designated to exercise its discretion in the matter, loses sight of a legislative purpose to recognize and to discharge an obligation, regardless of its legal force, which the subject-matter of the statute and the circumstances leading to the enactment make unmistakable. It is an old and well-recognized rule of statutory construction that, when the act to be done concerns the public interest, or the rights of third persons, permissive words conferring power, or authority, upon public officers, or bodies, will be construed as mandatory. (*Mayor, etc., of N. Y.* v. *Furze,* 3 Hill, 612; *People ex rel. Otsego County Bank* v. *Supervisors of Otsego County,* 51 N. Y. 401; Potter's Dwarris on Statutes, 220.) This act imposed upon the commissioners of the land office a duty to exercise the power conferred and, however permissive in form the words of the statute, they conveyed the legislative command, not to pass upon the legality of the claim, but to settle it at a just sum. The commissioners of the land office were required to act ministerially and not judicially. The justice of the claim was admitted and the commissioners were constituted agents for its settlement. This application was to compel the commissioners of the land office to perform the duty imposed by the statute, by taking "steps towards a settlement of the claim." This was quite a proper use of the writ of mandamus; whose "primary object," as was said by Judge Vann in *People ex rel. Harris* v. *Commissioners of the Land Office,* (149 N. Y. 26), "is to compel action." Its purpose was to set the commissioners in motion, without directing the manner of their performance or the amount to be allowed.

It is, further, objected by the appellants that the legislature had no power to allow this claim, because a private one and, therefore, falling within the prohibition of section 19 of article III of the State Constitution. I think this contention is sufficiently met by the decisions of this court in the cases of *Cayuga Nation of Indians*

*v. State,* (99 N. Y. 235), and of *Board Suprs. Cayuga County* v. *State,* (153 ib. 279). In the first of these cases, the dismissal of a claim, which was sought to be maintained in the Court of Claims by the Cayuga Nation of Indians, residing in Canada, for a share of the annuities agreed to be paid by the state to the Cayuga Nation, was upheld by this court upon the ground that such a claim was not a private one to be prosecuted as a debt. It was a matter between the state and an Indian nation and, therefore, was a public claim. The prohibition of the Constitution had reference to claims made against the state in behalf of private interests, as distinguished from claims of a public character. Just as, in the second of the cases cited, the claim of the county of Cayuga was made by a political division of the state and was, therefore, of a public nature, so, here, the claim made is that of an independent tribal organization, existing within the state under treaty provisions.

I reach the conclusion that the application has been properly granted by the court below. This leaves the respondents to execute the legislative purpose, as declared in the act, by entering into some agreement of settlement with the Cayuga Nation of Indians. They must take steps to agree upon the sum which is to be retained in the treasury of the state as a basis for the payment of annuities to the members of the nation within this state. It is to be assumed that a sense of justice and a spirit of fairness towards the Indians will govern them in agreeing upon the principal sum to be awarded, as well as in the allowance of any sum as a charge against the award for the expense of prosecuting the claim. With those questions, however, the court is not concerned.

For these reasons, I advise that the order appealed from should be affirmed; with costs.

VANN, WILLARD BARTLETT and HISCOCK, JJ., concur; CULLEN, Ch. J., and HAIGHT, J., dissent on the ground that the land board did comply with the statute and

adjusted the claim and the fact that the governor did not approve it did not devolve on the land board the duty of taking up the claim anew. It was a single action provided by statute and that has been done. HAIGHT, J., dissents also on the additional ground that the statute itself was directory; WERNER, J., not voting.

Order affirmed.