THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN F. HYLAN, as Mayor of the City of New York, et al., Appellants, *v.* THOMAS E. FINEGAN, as Acting Commissioner of Education of the State of New York, Respondent.

State department of education — New York (city of) — school moneys appropriated by state and apportioned to New York city — controversy whether such moneys may be used in reduction of taxes or be placed to credit of board of education — writ of prohibition — state commissioner of education has no authority to decide such controversy — when writ of prohibition should be granted.

1. The commissioner of education, by virtue of section 890 of the Education Law (Cons. Laws, ch. 16), has the power of deciding controversies arising from the action or failure of action of bodies or individuals generally, or, for the time being, made agencies of the education department which are subject to the undisputed authority

of the Education Law and bound to obey its commands. The subdivisions of section 890 enumerate bodies and officials recognizing. the binding effect of the Education Law, standing as agents under and of it but differing in respect of its meaning and application or refusing to abide by it. The legislature has thus conferred upon the commissioner broad but limited powers to enforce the Education Law.

2. The appellants are seeking to restrain by writ of prohibition the commissioner from entertaining jurisdiction and making determination of a controversy which has arisen between the municipal authorities of the city of New York and the board of education of that city concerning the disposition of school moneys appropriated to that city by the state. It is the claim in behalf of the city that under section 1102 of its charter these moneys may be credited to the " general fund for the reduction of taxes " as a reimbursement in part for moneys raised by taxation for school purposes. The board of education claims that said charter provision was impliedly repealed by chapter 786 of the Laws of 1917, and that such moneys should be by the municipal authorities placed to its credit. A proceeding was instituted by the commissioner of education for the purpose of making a quasi-judicial and final determination of this question. The city does not admit that it stands in the position of an agency of the education department nor that the provisions of the Education Law are applicable to the moneys which have been paid over to it, but denies these propositions and insists that under the statutes which constitute its charter it is entitled to hold the moneys which have been paid to it and apply them for the benefit of its taxpayers. Thus its claim is in hostility to the Education Law. *Held,* that the claim by the commissioner of the right to entertain jurisdiction of, and decide, such a controversy cannot be sustained, and that a writ of prohibition should be granted. (Education Law, §§ 96, 890 (Cons. L. ch. 16); Charter City of New York, § 1102; L. 1917, ch. 786.) (*People ex rel. Board of Education* v. *Finley,* 211 N. Y. 51; *Bullock* v. *Cooley* 225 N. Y. 566, distinguished.)

*People ex rel. Hylan* v. *Finegan,* 187 App. Div. 737, reversed.

(Argued October 1, 1919; decided November 18, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered June 18, 1919, which affirmed an order of Special Term denying a motion for a writ of prohibition.

The facts, so far as material, are stated in the opinion.

*William P. Burr, Corporation Counsel (William E. C. Mayer, George P. Nicholson* and *John F. O'Brien* of counsel), for appellants. The state commissioner of education is without jurisdiction to cite the municipal authorities of the city of New York before him on the petition of the superintendent of schools for the purpose of arriving at a determination as to the proper and lawful disposition of public school moneys apportioned by the state to the city of New York, when, in so doing, he seeks to make a final and conclusive determination, binding on such authorities, as to whether or not section 1102 of the Greater New York charter is repealed by implication by the act, Laws of 1917, chapter 786. In attempting so to do he is acting in excess of the jurisdiction conferred on him by the Education Law. (*Bullock* v. *Cooley,* 225 N. Y. 566; *People ex rel. Bd. of Education* v. *Finley,* 211 N. Y. 51; *People ex rel. Light* v. *Skinner,* 159 N. Y. 162; *Ramsay* v. *Hayes,* 187 N. Y. 367.)

*Charles D. Newton, Attorney-General (Frank B. Gilbert* of counsel), for respondent. The commissioner of education has administrative control over the apportionment and disposition of moneys appropriated by the legislature for the support of common schools and has jurisdiction to examine into and determine controversies as to the disposition of such moneys. (*Gunnison* v. *Board of Education,* 176 N. Y. 11; *Ham* v. *Mayor,* 70 N. Y. 459; *Dannat* v. *Mayor,* 6 Hun, 88; 66 N. Y. 585; *People ex rel. Board of Education* v. *Draper,* 78 Misc. Rep. 329; 211 N. Y. 51; *Hutchinson* v. *Skinner,* 21 Misc. Rep. 729; *Matter of Hirshfield,* 177 N. Y. Supp. 363.) The petition of the city superintendent properly presented to the commissioner the question as to the disposition to be made of the public school moneys apportioned to the city of New York, and the commissioner is authorized to entertain such petition and investigate as to the

matters set forth therein.  (*People ex rel. Bd. of Education v. Finley,* 211 N. Y. 51; *Matter of Harris,* 58 Misc. Rep. 297.)

HISCOCK, Ch. J.  The appellants are seeking to restrain by writ of prohibition the commissioner of education of the state from entertaining jurisdiction and making determination of a controversy which has arisen between the municipal authorities of the city of New York and the board of education of that city concerning the disposition of school moneys appropriated to that city by the state.  It is the claim in behalf of the city that under section 1102 of its charter these moneys may be credited to the " general fund for the reduction of taxes " as a reimbursement in part for moneys raised by taxation for school purposes.  The board of education, on the other hand, claims that said charter provision was impliedly repealed by chapter 786 of the Laws of 1917, and that such moneys should be by the municipal authorities placed to its credit.  Without going into further detail and without considering its merits, it is sufficient to state for the purposes of this discussion that the controversy involves a real question which may be debated seriously and in good faith and that the claim of the city has no appearance of a sham or pretense.

Claiming to act under the provisions of the Education Law the superintendent of schools of the school district of New York presented to the respondent as commissioner of education a long communication setting forth in much greater detail than has been necessary here, the nature and history of the controversy which has been referred to and which concluded with the submission to the commissioner for answer of the question which was involved and with the request " that prompt action be taken by the State Department of Education looking to the restoration to this School District of such moneys as may have been diverted therefrom and that

such other relief may be afforded as is contemplated by law and necessary in the premises."

In response to this petition the commissioner caused to be served upon the municipal authorities of New York city a notice to the effect that a hearing would be had before him at his office at a specified time " for the purpose of arriving at a *determination* as to the proper and. lawful disposition of public moneys apportioned to the City of New York under and pursuant to the provisions of the Education Law."

This notice construed in the added light, if that be necessary, shed by the attitude of the commissioner of education in this proceeding, makes it perfectly plain that he claimed jurisdiction and proposed to make a *determination* of the controversy which, under the provisions of a statute hereinafter to be discussed, would be binding upon the city and .subject to no review.

There then was and still is a provision of the Education Law [Cons. Laws, ch. 16] (§ 96) which gives the commissioner of education power " to cause to be instituted such proceedings or processes as may be necessary to properly enforce and give effect to any provision * * * pertaining to the school system of the State," and it is true that the notice served upon appellants did contain reference to this section. But consideration of the entire notice and of the argument upon this appeal shows beyond the possibility of gainsaying it that the commissioner was not proceeding under that section but was proposing as a tribunal of last resort subject to no review to decide whether the charter provision had been repealed and who, therefore, was entitled to the large fund in dispute. And the question presented by the application for the writ of prohibition is the one whether he has such power.

It is claimed in his behalf that the jurisdiction and authority are found in the provisions of section 890 (formerly 880) of the Education Law which enacts that

" any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action " by certain specified individuals, officials and agencies. In our opinion an interpretation of this section holding that it is broad enough to confer upon the commissioner of education jurisdiction to make a final and conclusive decision of the present controversy, would be not only unjustifiable but extravagant and somewhat startling.

The education department of the state is a great department. Its organization extends in many directions, embraces many activities and employs manifold agencies. The commissioner of education is, by statute, made its executive director and charged with the general duty of overseeing its administration. It, of course, was and is inevitable that constant controversies should arise in the administration of this system. And so for many years it has been deemed a wise policy to confer upon the commissioner of education the jurisdiction and power summarily to decide such controversies. This policy now largely finds expression in the provisions of section 890 which is claimed as the authority for the proposed action of the commissioner. That section undoubtedly does confer upon the commissioner an extended quasi-judicial power to determine controversies. But it seems to us that its provisions show a very distinct limitation upon this power. It gives the commissioner power of deciding controversies arising from the action or failure of action of bodies or individuals generally or, for the time being, made agencies of the education department and

which are subject to the undisputed authority of the Education Law and bound to obey its commands. The powers and limitations alike conferred and existing under this section are made plain by a consideration of its subdivisions specifying the bodies or persons whose action may be reviewed and passed on by the commissioner. As illustrative of other subdivisions we find specified as those whose actions may be reviewed, school district meetings, school commissioners and other officers acting or refusing to act in the formation of a school district, officials refusing to pay over school moneys, etc. The last subdivision of the section which deals in general language is, of course, to be construed in the light of its relation to the other subdivisions of the section and so construed is not any broader in the ultimate test than they. It is seen at once that these subdivisions enumerate bodies and officials recognizing the binding effect of the Education Law, standing as agents under and of it but differing in respect of its meaning and application or refusing to abide by it.

As this court has held, the legislature under such circumstances has wisely conferred upon the commissioner of education broad but nevertheless limited powers to enforce the provisions of the Education Law and by summary decision to settle disputes arising in the administration of our school system. (*People ex rel. Board of Education, N. Y., v. Finley,* 211 N. Y. 51; *Bullock v. Cooley,* 225 N. Y. 566.) But such cases as those are entirely different than the present one. As we have said, the city of New York does not admit in this matter that it stands in the position of an agency of the education department and does not admit that the provisions of the Education Law are applicable to the moneys which have been paid over to it. On the contrary, it denies and repudiates these propositions and insists that it stands as a municipality under the statutes which constitute its charter entitled

to hold the moneys which have been paid to it and apply them for the benefit of its taxpayers. It does not claim under the Education Law. It claims in hostility to it and defies its commands. It seems to us so clear that determination of such a controversy is not and ought not to be within the jurisdiction of the commissioner of education that the proposition cannot be clarified by extended discussion. If the proposition of the commissioner of education is correct then he would have a power to settle controversies between bodies within the department of education and third parties outside of its jurisdiction involving large property rights which, because of the finality of his decision, would be more far reaching than that possessed by the Supreme Court of the state.

It is, however, suggested that while the commissioner has not the power fully and finally to determine the controversy which has arisen, he should be permitted to institute and conduct proceedings before himself, if upon examination we should conclude that section 1102 of the charter has been repealed by the provisions of the Education Law. This suggestion is supposed to be in accordance with those authorities which hold that while a court of limited powers cannot acquire jurisdiction by incorrectly deciding facts sustaining the same, nevertheless if the facts do actually give it jurisdiction it may proceed. In my opinion that argument and suggestion are entirely inapplicable to the present case.

If we should assume that the commissioner of education under some proper authority had been enabled to institute and had instituted proceedings before himself to compel the municipal authorities to credit the moneys received from the state to the board of education, it doubtless would be proper on an attempt to stay those proceedings to determine whether they should be thus credited and not stay the proceedings if they should be. That, however, is not at all the situation. As has been stated, the proceeding was instituted by the com-

missioner of education for the purpose of making a quasi-judicial and final *determination* of the question whether the city of New York in its tax fund or the board of education by credit to it was entitled to several millions of dollars received from the state. Section 890 authorizes the final and controlling determination by the commissioner of certain matters and he claims that this controversy is one of them. He has not instituted this proceeding for the purpose of enforcing a conceded or established right but for the purpose of determining what are the rights of the contending parties. In his argument he does not shun any of the consequences of this position. His counsel expresses himself as being grateful for the opinion and advice " volunteered " by the court below in respect of the merits of the case. " He is entirely willing that this court upon the determination of this appeal should express its views as to the implied repeal of  *  *  *  section 1102 " of the New York charter and states that the commissioner would be largely influenced by the expression of its views. But in the end with entire confidence and clearness as defining his position it is said that " whatever may be said by this court  *  *  *  the commissioner must under the statute be permitted to make a *determination* of the questions presented to him  *  *  *  in due form as is provided by law."

Thus the question is one of initial jurisdiction to entertain and determine this controversy and it is too well settled to require amplification that the question of jurisdiction is not to be decided by a conjecture as to the method in which it will be exercised. If the commissioner has jurisdiction to entertain and determine this controversy then he has the power to finally decide that section 1102 of the charter has not been repealed and that these moneys should not be credited to the board of education, although this court might hold the contrary view, and *vice versa.* It is not a case where we can hold

that he is entitled to enforce a right which we might think exists, but a case where jurisdiction is claimed to determine a controversy in any way that shall seem proper to the judicial mind of the commissioner. That we do not think he has power to do.

These views lead us to the conclusion that the orders of the Appellate Division and of the Special Term should be reversed, with costs in all courts, and the application for the writ of prohibition granted, with costs.

CHASE, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur; HOGAN, J., absent.

Orders reversed, etc.