In the Matter of the Application of the Board of Education of Union Free School District No. 2 of the Town of Brookhaven, Suffolk County, and Others, Appellants, for a Certiorari Order against Frank P. Graves, as Commissioner of Education of the State of New York, Respondent.   (Case No. 888.)

Third Department, May 26, 1925.

Schools — consolidated union free school district — transportation of children of school age residing in remote part of district — board of education does not have power or duty, under Education Law, §§ 310 and 325, to furnish transportation — district has discretion under Education Law, § 206, subd. 18, to provide transportation — Commissioner of Education has no power, under Education Law, § 891, to direct board of education to provide transportation and levy taxes to pay for same.

The board of education of a consolidated union free school district does not have the power, under section 310 of the Education Law, to provide for transportation of children of school age residing in a remote part of the district, nor does said section impose a duty to do so, and furthermore, such a board of education has no power or duty to levy a tax for such transportation under section 325 of the Education Law.

The transportation of children residing in a remote part of such a district at the expense of the district is not a duty imposed upon the district by subdivision 18 of section 206 of the Education Law, but it is within the discretion of the district to provide for transportation.

Accordingly, the Commissioner of Education has no power under section 891 of the Education Law to direct the board of education of a consolidated union free school district to provide transportation for children residing in a remote part of the district and to levy a tax to pay for the same, notwithstanding the children for whom transportation is asked, at the expense of the district, reside approximately three miles from the schoolhouse; that their parents are financially unable to transport their children to the school; that the roads over which they must travel are infrequently used and are almost impassable at certain seasons of the year; that several of the children, although of school age, are so young that it will be impossible for them to attend school unless they are transported to and from the schoolhouse; that in the absence of transportation, the children and their parents will not be able to comply with the provisions of the Education Law relating to compulsory education; and that the assessed valuation of the school district is so high in comparison with the cost of maintenance of the school that it would not be a burden on the school district to pay the expense of transportation.

HINMAN, J., dissents, with opinion.

APPEAL by the petitioners, Board of Education of Union Free School District No. 2 of the town of Brookhaven, Suffolk county, and others, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 18th day of October, 1924, granting defendant's application to vacate a certiorari order granted on the 3d day of July, 1924.

*Lester Hand Jayne*, for the appellants.

*Frank B. Gilbert* [*Irwin Esmond* and *Raymond F. Allen* of counsel], for the respondent.

VAN KIRK, J.:

On August 14, 1923, fifteen residents of union free school district No. 2 of the town of Brookhaven, Suffolk county, presented a petition to the board of education of the district, which is a consolidated district. The petition stated that the petitioners " do hereby respectfully petition the Board of Education of the said school district to provide transportation for the children of the residents of said school district, living in the district, including the residence of Bernard Selleck and that part of the district lying south of his said residence." The board of education took no action in reference to furnishing the transportation prayed for. On the 28th day of September, 1923, Sadie D. Hawkins, one of the petitioners to the board of education, presented a petition to the Commissioner of Education. The petition set up the presentation to the board of education of the petition signed by the fifteen residents and stated that the board had refused to take any action thereupon. It contained the following: " That deponent acting for those signing the petition appeals to the Commissioner of Education

for relief and for an order requiring the Board of Education of Union Free School at Setauket, New York, being district #2 town of Brookhaven to furnish a conveyance for the children residing in South Setauket in said District at a distance of more than two and one-half miles from the school house." The petition also contained the following: " That on several occasions deponent has brought the question of transportation before the Board of Education, and they have always turned the application down. Once the question came up before a district meeting and was turned down." The board of education, on the 15th day of November, 1923, filed an answer to the petition. On the 21st day of March, 1924, the Commissioner of Education made an order reading as follows: " The appeal is sustained. It is ordered that the Board of Education of Union Free School District No. 2 of the Town of Brookhaven, Suffolk County, be and it is hereby directed to provide conveyance immediately for the appellant's child and other children residing in the neighborhood referred to in this appeal who are required to travel an unreasonable distance in order to attend the district school, and to pay the cost of such conveyance from any moneys that are on hand belonging to the district that are available for such purpose. In the event there are no moneys available the Board of Education is hereby authorized and directed to raise by tax upon the taxable property of the district a sum sufficient to pay such cost of conveyance." (See Matter of [Hawkins] Appeal Relative to Transportation of Children [Town of Brookhaven], 31 State Dept. Rep. 85, 88.) A meeting of the voters of the school district was subsequently called by the board of education. There was submitted to the meeting a resolution to provide for the transportation of pupils in accordance with the order of the Commissioner. Eighty-three votes were cast at said meeting, all of which were against the resolution except the votes of the fifteen petitioners. Thereafter, on May 26, 1924, the Commissioner of Education made an order withholding from the district the State moneys apportioned to it on the ground that the board of education had failed to comply with his order previously made. Thereafter the board of education obtained an order of certiorari to review the action of the Commissioner in respect to the two orders made. The order was subsequently vacated and from the vacating order so made this appeal was taken.

We do not in this opinion consider the question whether or not the Legislature can delegate to the Commissioner of Education the power to tax a school district. If all the provisions of the Education Law are valid we think the Commissioner has in this case exceeded his power.

The Commissioner of Education is by statute made the executive director of the Education Department of the State and is charged with the general duty of overseeing its administration. He is given *quasi* judicial power to determine, among others, such controversies as may arise from acts or failures to act of a board of education or a school district meeting. But the power given to him is not an unlimited power. (*People ex rel. Hylan* v. *Finegan,* 227 N. Y. 219, 224 and cases cited at p. 225.)

Boards of education and school district meetings have such powers only as are delegated, and such duties only as are imposed, by statute. We find nothing in the statute giving the Commissioner of Education power to add to or take from those powers delegated and those duties imposed. He may require the law to be obeyed; he may not make law; his is an executive, not a *legislative* power.

The general powers and duties of boards of education are fixed by section 310 of the Education Law, as amended. These powers and duties do not include the furnishing of transportation to scholars. There are some additional powers and duties specially given. In article 6-B " Central Rural Schools " are provided for. (§§ 180–186, added by Laws of 1914, chap. 55, as since amd.) By the last section power is in form given to the Commissioner of Education, without any previous vote of the district, to require the district to pay for transportation of scholars within a central school district. From this it may be inferred that he may order the board of education to raise the necessary funds by taxes. Article 6-C provides for " Central High School Districts." (§§ 187–189-l, added by Laws of 1917, chap. 137, as since amd.) In these districts the board of education is given power, without vote of the district, to provide transportation for scholars and, if the board fails to so provide, the Commissioner of Education may require the board to provide such transportation. So far as we have been able to find, in these two articles is the only direct authority given to the Commissioner of Education to require transportation to be furnished to the scholars in a district and to tax or cause to be taxed a district therefor; they do not apply to consolidated districts. Article 5 (§§ 120–154, as amd.) provides in section 130 *et seq.* (added by Laws of 1913, chap. 129, as amd.) for the consolidation of school districts. With reference to these there is no special provision authorizing the Commissioner of Education to require transportation to be furnished or to tax a district therefor. Nor is there any mention of transportation of scholars except in section 134 (added by Laws of 1913, chap. 129, as amd. by Laws of 1923, chap. 716; since amd. by Laws of 1924, chap. 192, and Laws of 1925, chap. 674), which permits the use of State moneys for that purpose.

If then such power exists in the Commissioner of Education it must be found in the general provisions of the Education Law. Among the general powers and duties of boards of education, fixed by section 310, as amended, some involve the expenditure of money and the raising of taxes therefor by vote of the inhabitants of the district. Then section 325 provides: "Levy of tax for certain purposes without vote. If the inhabitants shall neglect or refuse. to vote the sum estimated necessary for teachers' wages, after applying thereto the public school moneys, and other moneys received or to be received for that purpose, or if they shall neglect or refuse to vote the sum estimated necessary for ordinary contingent expenses, the board of education may levy a tax for the same, in like manner as if the same had been voted by the inhabitants." Here is a plain distinction between those purposes which are essentials and necessaries and those which are left to the discretion of the inhabitants; and it is a fair inference that the board may not levy taxes, the voters having refused, except in the cases here specified, or where a mandatory statute places the duty upon a school district to provide funds for a necessary school purpose. Among the general provisions of the statute, section 206, subdivision 18, alone authorizes the inhabitants of a district to provide by tax or otherwise for the conveyance of pupils residing therein to the school of the district. This is the section giving powers to the district meeting; it does not purport to impose duties upon the district meetings. We may assume that, if the duty to furnish transportation were imposed upon the board of education or the district meeting, the Commissioner of Education would have the right to require the board of education to furnish transportation, or the school district to act. But, where the matter is left to the discretion of the voters, he could not direct how their votes should be cast. We think his powers are limited to matters of school administration and policy and he is not invested with power to require the board of education or any officer of the school district to levy taxes, except in cases where the duty is imposed upon the board or officer to furnish that thing or service to which the moneys to be raised by tax are to be applied. There seems to be an intimation of this in *Bullock* v. *Cooley* (225 N. Y. 566, 578), where the court said: "The determination of the Commissioner of Education upon the appeal involved matters of school administration and policy not without his jurisdiction and his decision is not subject to review by the courts so far as it pertained to such school administration and policy and but incidentally, if at all, affects property rights." And upon this subject in *Gautier* v. *Ditmar* (204 N. Y. 20, 28) the court said: "While it would be

incompetent for the Legislature to leave to a State officer or department the power to determine whether a tax should be levied, or at what rate, or upon what property, it may lawfully delegate to a ministerial officer or any department, or its appointee or other authority, the power of using the machinery, as and in the method created by it, for the collection of the taxes it has levied."

We think that section 206, subdivision 18, is not mandatory. While it is true that, where a public body or officer is clothed with power and furnished with means to do an act required for the public interests, the execution of such power will often be required as a duty, although the wording of the statute seems to be permissive, in which cases the word " may " is interpreted as mandatory. But in our view this is not such a case; a private citizen is not a public officer or body; that rule is not applied to private citizens exercising the right of franchise and thereby of determining whether or not a tax should be levied. The public officer or body represents the public and may be compelled to perform his duty in its interest; the citizen voters act for themselves in a matter resting primarily in their discretion. There is still such a word as ".' may." There is such a thing as authorizing an act to be done, without imposing the duty that it should be done. The wording of this subdivision 18 of section 206 is permissive. Without the permission therein given the district meeting could not vote a tax or appropriate district money for this purpose. If there had been the intent to impose the duty upon the district why was it not so expressed? It was so expressed in the sections as to central schools above cited. If it was meant to give the Commissioner of Education power to overrule the vote of the district, why put the district to the useless expense and trouble of calling a meeting and taking a vote? Is the district meeting authorized to do a vain thing? We may be reminded that the transportation of scholars to school has never been considered a part in the administration of our common school system; and that in sections 620 to 636, as amended, providing for compulsory education, the parents are required to see that the children attend the schools and there is no provision for transportation of children of indigent parents. These provisions in this respect are in harmony with the law and custom prior to the enactment of subdivision 18 of section 206.

Section 891 of the Education Law (as renum. from § 881 by Laws of 1918, chap. 252), giving the Commissioner of Education power upon appeal from acts of a board of education or a district meeting " to make all orders, by directing the levying of taxes or otherwise, which may, in his judgment, be proper or necessary to give effect to his decision," in our view does not confer upon

him authority to disregard the vote of a district meeting and require the board of education to furnish transportation to the scholars, thus requiring it to perform a duty the statute does not impose upon it or authorize it to perform. The words and spirit of this statute find sufficient purpose in the fact that the Commissioner is empowered to require a board of education, or a school district meeting, to perform those duties which are imposed upon them respectively by statute, to furnish schools, teachers, equipment and facilities necessary for the "ordinary contingent expenses" of the schools. (See Education Law, §§ 324, 325.) We may assume that the Legislature knew that in many school districts the requirement that scholars should be transported to the school building would expose the taxpayers to heavy expenses and liabilities (See *Williams* v. *Board of Trustee*, 210 App. Div. 161); that it intended, as its language in this subdivision 18 of section 206 of the Education Law given its ordinary meaning plainly states, to empower the inhabitants at a school district meeting in their discretion to impose this new and additional burden upon themselves and that it did not intend to give the Commissioner of Education power to repudiate the wish of those voters and of his own choice impose the burden.

The order withholding from this school district the public money we think was unjustified and beyond the power of the Commissioner to make.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with costs.

All concur, H. T. KELLOGG, J., with an opinion, in which McCANN, J., concurs, except HINMAN, J., dissenting with an opinion.

H. T. KELLOGG, J. (concurring):

The principle that the taxing power may not be delegated by the Legislature to any officer, board or person whatsoever knows but one exception. That exception is that municipal officers may be granted the power to impose taxes upon property within a municipality for municipal purposes. Otherwise the principle is universal in scope and application. (*Schuster* v. *Metropolitan Board of Health*, 49 Barb. 450; *Matter of Brooklyn Children's Aid Society*, 166 App. Div. 852; *Gautier* v. *Ditmar*, 204 N. Y. 20; *Township of Bernards* v. *Allen*, 61 N. J. L. 228; *Van Cleve* v. *Passaic Valley Sewerage Comrs.*, 71 id. 574; *State* v. *Mayor*, 103 Iowa, 76; *Vallelly* v. *Board of Park Comrs.*, 16 N. D. 25; Cooley Const. Lim. [6th ed.] 137; 37 Cyc. 725; Dillon Mun. Corp. [4th ed.] § 741; Gray Limitations of Taxing Power, chap. VI; 26 Harvard L. R. 257.) A board of health, holding office by the appointment of the Governor

of the State, not being elected by the people of a municipality, nor appointed by any persons so elected, is not a board to which the power of local legislation may be committed. (*Schuster* v. *Metropolitan Board of Health, supra.*)  The power to tax property within a municipality for school, health or other purposes cannot be delegated to a commission appointed by the Governor to be exercised in instances where the local officers neglect or refuse to act. (*Township of Bernards* v. *Allen, supra.*)  The power to impose local taxes cannot be delegated to a board of park commissioners the members of which are not elected by the people. (*Vallelly* v. *Board of Park Comrs., supra.*)  It may not be delegated to a board of library trustees not elected by the people. (*State* v. *Mayor, supra.*)  " The question of taxation and what property is liable therefor, and of exemption both from taxation and also from local assessments, is peculiarly legislative in character and may not be delegated to administrative officers." (*Matter of Brooklyn Children's Aid Society, supra.*)  " It is a legislative function and is vested in the absolute legitimate discretion of the Legislature.  It cannot be delegated, except as the Legislature may confer upon the municipalities or political divisions, which are through the local authorities representatives of the people and participants in the government of the State, powers of providing revenue for local governmental and public purposes." (*Gautier* v. *Ditmar, supra.*)  The Commissioner of Education, in the case at bar, is not within the recognized exception.  He is not a municipal officer.  He was not elected by the voters of a municipality.  He was not appointed by elected municipal officers.  Indeed he was not elected by the people of the State or by the elected representatives of the people.  If he may impose local taxation, an exception heretofore unknown in the law will have been made and a striking example of taxation without representation will be permitted to take place.  There can be no doubt that the Commissioner's order, which of necessity will result in the laying of taxes and in terms provides therefor, is a taxing order.  In my judgment the Legislature was without authority to confer upon the Commissioner the power to make the order in question even if the order is within the terms of the statute.  I, therefore, concur.

McCANN, J., concurs.

HINMAN, J. (dissenting):

An order of certiorari was obtained *ex parte* from a justice of the Supreme Court for the purpose of having this court review a determination of the Commissioner of Education of the State of New York.  A motion was made to vacate this order of

certiorari and the justice holding the Special Term at which this motion to vacate was made returnable has held that the said Commissioner had jurisdiction to make the determination in question and that his decision was final and conclusive and not subject to review in the courts. The order of certiorari was accordingly vacated, giving rise to this appeal. We are not left in doubt as to what the record before us would have been if the order of certiorari had not been vacated and if the Commissioner had made a return to this court of all of the proceedings and papers before him concerning the matter of his determination. No hearing was conducted or sought and no oral testimony was taken. The evidence before him was entirely documentary and is contained in the record upon this appeal. From the evidence before him the following appeared: District No. 2 of the town of Brookhaven, Suffolk county, is one of the many school districts subject to the jurisdiction of the Commissioner of Education and of the Regents under the Education Law. From the records of the Education Department it appears that said district is a union free school district and has a board of education. This district was formed from the consolidation of several districts. One school took the place of several. Eleven teachers were employed. In the year in question there were 256 pupils in the school. The assessed valuation of the district was over $1,600,000 and the tax rate in said district was approximately $10 per $1,000. On November 2, 1923, a taxpayer of the district having a child of school age and living three miles from the schoolhouse over a road very little traveled, especially in winter, filed a petition with the Commissioner of Education petitioning " for relief arising out of the following statements of facts." The petitioner stated that at the time the old school districts were consolidated the residents of the old district in which she had lived were promised that they would either have transportation provided for the children, or a branch school would be kept in that part of the new district. She stated that the promise to provide the transportation, or to keep a branch school had never been kept. She stated the facts showing the necessity of transportation for her own daughter, eight years of age, and her inability to otherwise send her daughter to school. She stated in her petition: " That on several occasions deponent has brought the question of transportation before the Board of Education, and they have always turned the application down. Once the question came up before a district meeting and was turned down. On August 14, 1923, the petition, of which the annexed is a copy, was handed to the president of the Board of Education by the attorney of deponent with a request for the Board to take

some action thereon.    That deponent is informed that at the regular meeting of the Board of Education the matter was laid on the table indefinitely, the Board refusing to take any action thereon." Her petition set forth the necessities of the children of others living in her vicinity and also the character of the road over which these children would have to travel.    She appealed to the Commissioner for relief and for an order requiring the board of education to furnish a conveyance for the children residing in her vicinity. Thereafter the board of education filed an answer to this petition. From an examination of said answer it appears that none of the allegations of the petition were denied but the board set up certain facts which it claimed justified the failure to provide transportation. Various affidavits in support of the petition were thereafter filed as a reply to the answer of the board of education.    Neither the board nor any one else made application for a hearing upon the issues involved or for an oral argument and no issues were raised except the issue of the merits as raised by the answer of the board. The Commissioner of Education considered the papers on appeal and pursuant to authority conferred upon him by statute, he designated one of his assistants to investigate the matter, who thereafter made such investigation and reported in writing the facts found by him upon the merits of this controversy.    In his affidavit before us on this appeal, the Commissioner of Education states the case before him as follows: " That deponent as Commissioner of Education after a careful consideration of all the facts presented in this case came to the conclusion that the petitioner's child and other children of compulsory school age in the neighborhood, known as South Setauket, were being unlawfully deprived of school privileges in that they could not attend school because their parents were unable to provide transportation, and because the district through its electors assembled at district meeting had failed to do so and because the Board of Education had failed to give any proper attention to the appellants' repeated requests that something be done; that the situation was further aggravated because of the fact that the former South Setauket district in which the appellant lives had been consolidated with District No. 2, as appears from the undisputed allegations of the petition, and the children required to attend the central school without any provision being made for transportation; that in such circumstances the power conferred by statute upon the voters of the district to provide transportation became their duty and since the matter had come before the district meeting and been ' turned down,' as alleged in the petition and not denied in the

4

answer, and since the electors had failed to perform their plain duty and since the Board of Education, as the official representatives of the district, had repeatedly ignored the appellant's request to take some action in regard thereto, it became deponent's duty, as Commissioner of Education, to overrule and correct the district's refusal to provide transportation and to require the district to perform its duty and to compel the district, acting through its Board of Education, to provide adequate transportation."

On March 21, 1924, the Commissioner rendered his opinion and decision in writing in which he set forth all the facts and proceedings and his views upon the duty of the district under the law. He sustained the appeal and ordered the board of education " to provide conveyance  *  *  *  and to pay the cost of such conveyance from any moneys that are on hand belonging to the district that are available for such purpose." He also ordered: " In the event there are no moneys available the Board of Education is hereby authorized and directed to raise by tax upon the taxable property of the district a sum sufficient to pay such cost of conveyance."

The Commissioner has not given an arbitrary construction or application of the statutory duty imposed upon the district in this instance. He has fully explained the grounds of his decision. In his opinion the Commissioner stated as follows: " The law does not impose upon a district the arbitrary duty of providing transporation for children living in remote parts of the district. Qualified electors of a district may, by a majority of the votes of those present, provide by tax or otherwise for the conveyance of children of school age whenever there are any such children in the district who reside so remote from the schoolhouse that they are practically deprived of school advantages during any portion of the school year (See Education Law, § 206, subd. 18), but where it appears that districts have been dissolved and consolidated and children are required to walk an excessive distance in order to attend school it has been held repeatedly that there was an obligation on the part of the consolidated district to see that conveyance was furnished. This is particularly true where, as in the present case, it affirmatively appears that the parents have no adequate means of transporting the children. Where the children are so placed that they cannot walk to and from school during any portion of the school year and their parents are unable to provide conveyance it has been held repeatedly that it is the duty of the district in which such children reside to take action under the authority conferred by the above-cited section of the Education Law and make necessary provision for conveyance. In my opinion this

district has failed to fulfill its duty in this respect as to these children residing in the above-mentioned portion of the district. This is not a case where the taxable resources of the district are insufficient to justify an order requiring transportation. The district has an assessed valuation of over $1,600,000. While a school is being maintained with eleven teachers, the tax burden is not heavy and the evidence establishes the fact that the children living in this neighborhood are being denied educational advantages at present because they have no means of attending the school in their district and for that reason most of them have not attended school at all during the present school year. This condition cannot be permitted to continue. The consolidated district is financially able to provide transportation and the Board of Education must take immediate steps to do so." (See *Matter of* [*Hawkins*] *Appeal Relative to Transportation of Children* [*Town of Brookhaven*] 31 State Dept. Rep. 85.)

The decision of the Commissioner was thereafter duly filed in the district and a copy thereof was served upon the board of education. Instead of complying with the decision and order of the Commissioner, the board of education called a district meeting and submitted to that meeting the question whether transportation should be provided. The voters present at that meeting voted against providing such transportation. When this action was called to the attention of the Commissioner, an order was made by the acting Commissioner of Education withholding from the district the balance of the public moneys due to it on account of the failure of the district to comply with the decision and order of the Commissioner as authorized by the statute. Thereafter this certiorari proceeding to review the determination of the Commissioner was commenced.

It is urged that the Commissioner had no authority to issue his order (1) because the order was predicated upon an appeal from the action of the board of education and not from any action of a district meeting; (2) because section 206, subdivision 18, of the Education Law is not mandatory but provides that the inhabitants of the district at a district meeting *may* authorize transportation and the levying of a tax therefor; that the power of the board of education to provide transportation is dependent upon previous action of the district meeting authorizing the same; and that this board of education was not so authorized and has been ordered by the Commissioner to do something which the statute did not authorize the board to do or the Commissioner to direct it to do; and (3) that the Legislature had no power to confer upon the Commissioner of Education authority to direct the

levying of a tax upon the inhabitants of the district to enforce his decision under section 891 of the Education Law, even assuming that the appeal before him included an appeal in consequence of the action of the district meeting as well as that of the board of education.

It is provided by section 890 of the Education Law (as renum. from § 880 by Laws of 1918, chap. 252) that " any person conceiving himself aggrieved may appeal or petition to the Commissioner of Education who is hereby authorized and required to examine and decide the same; and the Commissioner of Education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action: 1. By any school district meeting; * * * 7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools." It is also expressly provided by section 891 of the Education Law (as renum. from § 881 by Laws of 1918, chap. 252) that " The Commissioner, in reference to such appeals, petitions or proceedings, shall have power: 1. To regulate the practice therein. * * * 4. To make all orders, by directing the levying of taxes or otherwise, which may, in his judgment, be proper or necessary to give effect to his decision." These grants of power must be considered in conjunction with the Constitution (Art. 9, §§ 1, 2) and the other provisions of the Education Law. In this connection the Court of Appeals has said: " By the Education Law the Education Department is charged with the general management and supervision of all public schools and all of the educational work of the State (Education Law, sec. 20), and the Commissioner of Education is the chief executive officer of the State system of education (Education Law, secs. 20, 94) and he is by the Legislature recognized as having judicial functions. (Education Law, secs. 46, 94, 398, 890, 891, 892.) The authority of the Commissioner of Education to hear appeals as by the statute provided and the binding effect of his decision and that of his predecessors in authority have been a part of our statute law since 1822. (Laws of 1822, chapter 216.)† * * * The purpose of the statute and of the

---

† See Laws of 1822, chap. 256, § 7; 1 R. S. 487, §§ 110, 111; Laws of 1830, chap. 320, § 7, repealing said §§ 110, 111, and adding new § 110; Consol. School Law of 1864 (Laws of 1864, chap. 555), tit. 12, § 1 *et seq.;* Consol. School Law of 1894 (Laws of 1894, chap. 556), tit. 14, § 1 *et seq.;* Education Law of 1909, § 360 *et seq.;* Education Law of 1910, § 880, *et seq.,* as renum. § 890 *et seq.* by Laws of 1918, chap. 252.— [REP.

amendment is to make all matters pertaining to the general school system of the State within the authority and control of the Department of Education and to remove the same so far as practicable and possible from controversies in the courts. It has been frequently held that there is conferred upon the executive head of the Education Department power to review on the petition of a person aggrieved any decision mentioned in the School or Education Law. * * * The State Constitution was revised and established in 1894 and it provides: ' The Legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this State may be educated.' It also provides: ' The corporation created in the year 1784, under the name of the Regents of the University of the State of New York, is hereby continued under the name of The University of the State of New York. It shall be governed and its corporate powers, which may be increased, modified or diminished by the Legislature, shall be exercised by not less than nine Regents.' (Constitution State of New York, article 9, secs. 1, 2.) It was ratified by the people with knowledge and appreciation of the history of the free common schools of the State and of The University of the State of New York." (*Bullock* v. *Cooley*, 225 N. Y. 566, 576.) Thus the broad purpose of the Education Law to make all matters pertaining to the general school system of the State within the authority and control of the Commissioner of Education as the executive head of the department has been held to be constitutional and valid. The Commissioner has the power to review on the petition of a person aggrieved, any decision mentioned in the Education Law. Section 890 of the Education Law " gives the Commissioner power of deciding controversies arising from the action or failure of action of bodies or individuals generally or, for the time being, made agencies of the Education Department and which are subject to the undisputed authority of the Education Law and bound to obey its commands. * * * As illustrative of other subdivisions we find specified as those whose actions may be reviewed, school district meetings," etc. (*People ex rel. Hylan* v. *Finegan*, 227 N. Y. 219, 224.)

Thus a school district meeting stands in the position of an agency of the Education Department and is subject to the undisputed authority of the Commissioner to decide controversies arising from its action or failure of action. The same is true of the board of education of this school district. The question of transportation of school children is a matter of school administration and policy under the Education Law. It is an incident and in some cases a necessary incident to the enforcement of the compulsory attend-

ance law. (Education Law, art. 23, as amd.) Unless the Commissioner exceeded any statutory authority in dealing with this controversy over transportation in this district, his ruling is final and conclusive under the law. It is claimed that his order was predicated upon an appeal from the action of the board of education and not from the action of the district meeting. The statute, however (Education Law, § 891), gives to the Commissioner the power to regulate the procedure and practice in all of the applications made to him for a review of any such decision. The statute does not prescribe any limitations as to practice. It is sufficient if the moving papers show facts sufficient to support his jurisdiction. He had the right to treat the petition and proceeding before him in this case as an appeal from the failure of the district meeting to act as well as the failure of the board to take such action as the situation required. The petition before him showed the necessary fact as to refusal of the district meeting to provide transportation. He could make the procedure before him as informal as he desired. He treated the appeal as one in consequence of the action of the district meeting and he granted to the petitioner the ultimate relief to which she conceived herself entitled and for which she asked. To say that his order was predicated upon an appeal only from the action of the board of education, is to find contrary to the fact expressly stated by the Commissioner. He expressly found that the district had passed upon the question with disapproval. He substituted his judgment for that of the district, as he had a right to do, and ordered the board of education to act accordingly.

The next question which arises is whether the Commissioner was guilty of a usurpation of power in substituting his judgment for that of the district meeting where the language of the Education Law (§ 206, subd. 18) is not mandatory in form but merely confers power upon the district meeting, through the vote of the inhabitants thereat, to provide for transportation by " tax or otherwise." It is provided by section 206, subdivision 18, of the Education Law that " whenever in any school district children of school age shall reside so remote from the school-house therein that they are practically deprived of school advantages during any portion of the school year, the inhabitants thereof entitled to vote are authorized to provide, by tax or otherwise, for the conveyance of any or all pupils residing therein * * * to the school maintained in said district, and the trustees thereof may contract for such conveyance when so authorized in accordance with such rules and regulations as they may establish," etc. It is claimed by the petitioners that this language is permissive only, leaving the matter to the judgment of

the inhabitants of the district " to provide, by tax or otherwise, for the conveyance " and limiting the trustees' right to " contract for such conveyance when so authorized." It is a long-established principle that where a public body is clothed with power and furnished with means to do an act required for the public interests, the execution of such power will be insisted upon as a duty, although the statute conferring it is only permissive. In such cases the word " may " is interpreted as mandatory. (*People ex rel. Cayuga Nation* v. *Land Commissioners*, 207 N. Y. 42, 50; *Phelps* v. *Hawley*, 52 id. 23; *Hagadorn* v. *Raux*, 72 id. 583; *Hutson* v. *City of New York*, 9 id. 163.) Under the broad and final power of the Commissioner to review any decision of the district meeting as a school agency and to decide the matter for the district, the Commissioner had the power to apply this doctrine in rendering his decision. Did he apply it arbitrarily and capriciously? That is the only question that might survive in a court review. In his opinion the Commissioner does not hold it to be the arbitrary duty of the district under this statute to provide transportation for children living in remote parts of *any district*, but he holds that under the facts and circumstances of this case, where districts have been dissolved and consolidated and children are required to walk an excessive distance under serious obstacles which prevent them from walking to and from school during any portion of the school year and their parents are unable to provide conveyance, thus unlawfully depriving these children of school privileges and in a district which has taxable resources amply justifying provision for transportation, the power conferred by the statute upon the voters of the district to provide such transportation becomes their plain duty under the Education Law. Since the electors had failed to perform their plain duty when the matter was brought before the district meeting and since the board of education, as the official representatives of the district, had repeatedly ignored the petitioner's request to take some action in regard thereto, the Commissioner held it to be his duty to overrule and correct the district's refusal to provide, by tax or otherwise, for the conveyance and to compel the district, acting through its board of education, to provide adequate transportation. The express grant of power to the inhabitants of the district to provide, by tax or otherwise, for such conveyance must be considered with the other provisions of the Education Law which make all matters pertaining to the general school system of the State, including decisions of school district meetings, within the authority and control of the Commissioner of Education as the executive head of the department. It seems clear that the Commissioner had the right to overrule and correct the refusal of the

district meeting to provide this transportation and to substitute his judgment for that of the district meeting and thus to lay the foundation for his order directing the district through its board of education to provide such transportation.

But it is claimed that his order involves the levying of a tax upon the inhabitants of this district and that the Legislature was without power to confer authority upon the Commissioner of Education to levy such a tax; that the power to tax cannot be delegated by the Legislature and that this rule is subject solely to the exception that the Legislature may delegate to municipal officers the power to tax, for municipal purposes, property within the municipality. This argument calls in question the right of the Commissioner " to provide, by tax or otherwise, for the convey-ance " under section 206, subdivision 18, of the Education Law, when he substitutes his action for that of the district in overruling or correcting its action and also that provision of section 891 of the Education Law which gives to him the power " to make all orders, by directing the levying of taxes or otherwise, which may, in his judgment, be proper or necessary to give effect to his decision." The theory, that this clear statutory authority authorizing the Commissioner to direct the levying of a tax upon the district is unconstitutional and void, is clearly unsound. The Commissioner does not levy the tax. He merely substitutes his decision for that of the district meeting. The school district is a unit of a unique State system which has been under the control of the Commissioner of Education and his predecessors in authority and the Regents since 1822. And since the passage of the Consolidated School Law of 1864 (Laws of 1864, chap. 555, tit. 12, § 2, subd. 4) the Commissioner of Education and his predecessors in authority have had the power given by section 891, subdivision 4, of the Education Law, to direct the levy of taxes when necessary or proper to give effect to their decisions. (See, also, Consol. School Law of 1894 [Laws of 1894, chap 556], tit. 14, § 2, subd. 4; Education Law of 1909, § 361, subd. 4.) This statutory power has been repeatedly exercised during so many years without having been disturbed on the ground of unconstitutionality that it ought not now to be questioned upon any such theory of interference with our principles of local self-government and as constituting " taxation without representation." With knowledge and appreciation of the history of the management of the common schools of the State as a State system under the control of the State Department of Public Instruc-tion and the Regents, there were inserted in the Constitution of 1894 provisions (*supra*) giving to the Legislature special powers and duties with reference to the maintenance and support of a " *system* " of free

common schools in the State. Clearly the " *system* " intended could have been that which the Legislature had adopted and approved for thirty years prior to the granting of the special constitutional power to the Legislature.

For these reasons I dissent from the views and determination of the majority of the court and vote for an affirmance of the order.

Order reversed on the law, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.