Michael E. Sweeney, J.
This is an article 78 proceeding seeking an order to annul the action of the Board of Education of Central School District No. 1 of the Towns of Milton, Malta, Ballston and Charlton, hereinafter referred to as Ballston Spa District, which rescinded its consent to the alteration of the boundary of a proposed consolidation of the Enlarged School District of the City of Saratoga Springs, hereinafter referred to as the Saratoga Springs District, pursuant to section 1525 of the Education Law.
The pertinent facts out of which this controversy arose are as follows: For several years it has been contemplated by the Commissioner of Education of the State of New York to bring about a consolidation of several of the smaller and surrounding school districts with the Saratoga Springs City schools. Much time, thought and work by a great many individuals went into this effort. The Commissioner of Education adopted a master plan for consolidating some 19 common school districts with the Saratoga Springs District, which was deemed proper and best educationally for the school children in this area. However, just prior to bringing consolidation under this master plan to a vote, it became evident that the residents of Milton Common School District No. 5, hereinafter referred to as Milton No. 5, one of the districts included in the master plan for consolidation with the Saratoga Springs District, did not desire to join with Saratoga Springs, but instead wanted to be affiliated with the Ballston Spa District. Some of the interested parties felt that this attitude might jeopardize the contemplated consolidation of the Saratoga Springs District. To avert a possible defeat of consolidation and thereby frustrate all of the efforts which had gone into this plan, members of the Boards of Education of Saratoga Springs and Ballston Spa, various trustees of the surrounding district schools, citizen committees, the two district superintendents, together with representatives of the State Education Department, studied and discussed the problem. After much thought and consideration, it was finally determined as a proposed solution to the *782 problem that Milton No. 5 be annexed to the Ballston Spa District. It was further determined that the northeast corner of Milton No. 5 be later annexed to the Saratoga Springs District when consolidation was effected. This was thought wiser because of transportation problems and commitments previously made by Saratoga Springs to keep neighborhood grammar schools in certain of (the districts to be consolidated. It appears that the State Education Department was aware of this proposal. From the petitions circulated at the time in the northeast corner of Milton No. 5 in favor of consolidation with the Saratoga Springs District and from other surveys, it appeared that a majority of the residents in this area was in accord with annexation to the Saratoga Springs District.
On March 5,1963 the Ballston Spa Board of Education passed a resolution agreeing to the annexation of Milton No. 5, and to the .subsequent annexing of the northeast corner of Milton No. 5 to the consolidated Saratoga Springs District, pursuant to section 1525 of the Education Law. On the following evening, March 6, the Saratoga Springs Board of Education passed a similar resolution. It must be pointed out that .these resolutions were contingent on the ultimate approval by the voters in Milton No. 5 and also a successful vote for consolidation of all of the other districts with the Saratoga Springs District. On March 27, 1963 the Commissioner of Education signed an order approving the dissolution of Milton No. 5 and its annexation to the Ballston Spa District, setting the effective date as of June 30, 1963. The Commissioner did not at that time approve the annexation of the northeast corner of Milton No. 5 to the proposed consolidated Saratoga Springs District, for the obvious reason it would have been premature. This had to await the consolidation vote by the people in the districts involved.
During the month of March it became apparent that some residents of the northeast corner of Milton No. 5 objected to that area being annexed to Saratoga Springs. Polls were taken once more, but with conflicting results.
To bring about a fulfillment of the plan originally agreed upon by the two Boards of Education, in the month of May, the residents of Milton No. 5, by at least a majority of the vote, agreed to annex to the Ballston Spa District. The residents of the other 18 districts also ¡by a majority of the vote, agreed to join the Saratoga Springs District. Subsequent to this, a house-to-house survey of the qualified voters of the northeast section of Milton No. 5 was conducted which results were inconclusive, but which indicated that the residents of *783 the area were about equally divided in their desire to affiliate with either the Ballston Spa District or the Saratoga Springs District.
On June 4, 1963 the Ballston Spa Board of Education rescinded its consent of March 5, 1963 ,to the alteration of the boundary of the newly consolidated Saratoga Springs District by the annexation of the northeast corner of Milton No. 5. The following reason was given: “Whereas, a petition was received from residents of that portion [northeast corner] protesting this action, and Whereas, a house-to-house survey of residents in the portion did not indicate that a majority of the residents desired the .separation ”.
It is this latter action taken by the Ballston Spa Board that the petitioner .seeks to have annulled. Petitioner William T. Ashton is a resident of the northeast corner of Milton No. 5 and has children of school age who are attending school.
The respondent Ballston Spa Board of Education contends that the resolution adopted on March 5, 1963 by that board consenting to the annexation of the northeast corner of Milton No. 5 to the proposed consolidated Saratoga Springs District would not have been given if the true facts had been known, i.e., that a majority of the inhabitants of this area did not wish to be annexed to the Saratoga Springs District. It further contends that the resolution was passed upon information furnished Ballston Spa Board of Education by the Saratoga Springs Board that a majority of the voters desired to be annexed to the Saratoga Springs District. This, it claims was erroneous. It should be pointed out at this time, however, that the Ballston Board does not claim this was done fraudulently or in bad faith. On the other hand, the Saratoga Springs Board of Education contends that the information given was accurate according to petitions and surveys made prior to March 5,1963.
The respondent Ballston Spa Board has raised several procedural points, none of which I feel has sufficient merit to defeat this proceeding. It is my opinion that petitioner is a proper party to bring this proceeding and that this court has jurisdiction. (People ex rel. Hylan v. Finegan, 227 N. Y. 219; Matter of Miller v. Gould, 121 Misc. 270.)
For a long period of time school authorities involved and other dedicated individuals were' diligently trying to work out a very complicated, contentions and consequential problem. A solution was not easy. At .the same time, the answer to be arrived at was of the utmost importance to a large group of people, and particularly to the .school children. To .solve this *784 problem required co-operation and compromise on the part of all concerned. It was with this in mind that the resolution in question and the corresponding one of Saratoga Springs were passed. No final determination could completely satisfy everyone. All that could be desired or hoped for was the best solution in light of the over-all picture, keeping in mind the educational and economic welfare of those to be affected. This is precisely what I believe was attempted by this plan.
The resolutions in question were contingent -on the approval by the voters. This approval was required by sections 1801, 1802 and 1526 of the Education Law. It was ultimately obtained. Section 1525 of the Education Law provides, as follows: “ § 1525. Alteration of boundaries of city school district. Notwithstanding the provisions of this chapter or any other general, special, or local law to the contrary, whenever the commissioner of education shall receive an application for an alteration of .the boundaries .of a city school district of a city with less than one hundred twenty-five thousand inhabitants, and the board of education of such city school district and the boards of education or trustees of all other districts to be affected by such alteration shall consent thereto in writing, the commissioner of education may make an order altering the boundaries of such city school district, and fix in such order a day when the alteration shall take effect.” It is most important to appreciate that the law does not require the approval of the individuals affected. A change in boundaries may be accomplished solely by resolutions of the boards of education in the districts affected, with, of course, subsequent approval of the Commissioner of Education. Consequently, in the present case the conflicting petitions and surveys as to the sentiment of the people in this northeast corner of Milton No. 5 are immaterial under section 1525 of the Education Law. Therefore, every act, from the passage of the two resolutions through the two elections, was legally performed. The issue thus narrows to whether a board of education may rescind its previous consent to a new alignment of its boundaries where another board of education has relied upon such consent, and where the voters in 19 school districts have thereafter gone to the polls and approved an over-all school district reorganization plan.
It is my opinion that the Ballston Spa Board of Education did not have the authority to annul the previous consent where so many people have since relied upon its action and changed their position as a result of this reliance. It is conceivable that the residents of the districts to be consolidated with the Sara- *785 toga Springs District would have preferred to vote on the master plan as originally devised by the Commissioner of Education which included all of Milton No. 5. It is also possible that the Commissioner of Education would not have consented to the inclusion of Milton No. 5 in the Ballston Spa District without the later annexation of the northeast section to the consolidated Saratoga Springs District. The Saratoga Springs Board, in relying on the consent of the Ballston Board, committed itself to continue the maintenance of a grammar school in Middle Grove and to provide necessary transportation for the children in the northeast corner of Milton No. 5. This may not have been feasible, or practical, or for the best interests of all involved without the annexation of the northeast corner of Milton No. 5 to the consolidated Saratoga Springs District.
If the Ballston Spa Board of Education is permitted to annul its original action, the vote taken, at least by those interested in the enlarged district of Saratoga Springs, does not reflect that which the voters thought they were voting on. This also applies to the resolution passed by the Saratoga Springs Board. It may be assumed that those in the Middle Grove area were very much concerned about the grammar school that had been promised. It might further be assumed that since the northeast corner of Milton No. 5 was going to be annexed to Saratoga Springs, a certain transportation problem would be solved.
Consequently, I conclude that the Ballston Board is estopped from annulling its original action of March 5; that it must certify its consent to the alteration of the boundary line and transmit same to the Commissioner of Education. (City of Hudson v. Board of Educ. of City of Hudson, 158 Misc. 583; Byrne v. Barrett, 268 N. Y. 199.)
It should be pointed out that this court does not have the authority to change the boundary line of any school district. That is solely the province of the Commissioner of Education, upon receipt of a certification of consent from the school districts involved, pursuant to section 1525 of the Education Law. The Commissioner of Education, upon a review of all of the facts, in his discretion, may approve or disapprove the alteration of such boundary line. While this court has no authority to compel a board of education to initially consent to a change in its boundary line, it does, however, have the authority to prevent a .subsequent rescission of a consent already relied and acted upon by others.