OPINION OF THE COURT
William H. Keniry, J.
This CPLR article 78 proceeding challenges the propriety of the decision of the State Commissioner of Education (Commissioner) in failing to authorize a second special election in a school district annexation proceeding.
The underlying facts are undisputed. The Commissioner issued an annexation order in May 1987, pursuant to the provisions of article 37 of the Education Law, which directed the dissolution of the petitioner, the Dannemora Union Free School District (Dannemora), and ordered the annexation of Dannemora’s territory into the Saranac Central School Dis *808 trict (Saranac). Pursuant to section 1802 of the Education Law, qualified voters of both districts then petitioned the Commissioner requesting that special meetings of the qualified voters of both the Dannemora and Saranac Districts be convened for the purpose of conducting permissive referendums to consider the dissolution and annexation order. The Commissioner granted the requests and the special meetings were held in both districts on May 26, 1987. The voters in the Dannemora District narrowly approved the dissolution and annexation proposal by a vote of 404 in favor to 395 in opposition. Annexation, however, was narrowly rejected by the Saranac voters by a tally of 270 in opposition to 268 in favor.
Sometime thereafter, the eligible voters of Saranac petitioned the Commissioner, pursuant to section 1803 (8) of the Education Law, for another special meeting to reconsider the issue. The petition was granted and the Saranac District held a special meeting on June 1, 1988 during which a resolution approving the annexation was apparently adopted.*
On April 20, 1988, eligible voters of the Dannemora District petitioned the Commissioner requesting that another special meeting be authorized in their district to reconsider their previous vote approving annexation. The Commissioner did not authorize such election upon the ground that the Dannemora voters were not statutorily entitled to reconsider the question.
Since the voters of both the Saranac and Dannemora Districts have approved the annexation within two years of the Commissioner’s order, the dissolution of the Dannemora District and the annexation of its former territory into the Saranac District was considered effective by the Commissioner and steps are presently underway to implement the consolidation.
The instant legal challenge to the Commissioner’s refusal to allow a revote in the Dannemora District ensued. The petitioners contend that the respondents’ actions constitute a denial of equal protection and due process of law to the voters of the Dannemora District. In addition, the petitioners contend that the respondents acted arbitrarily, capriciously and contrary to sections 1802 and 1803 of the Education Law in denying the request for a revote.
*809 The respondents, in their answer, allege that the Commissioner properly followed and interpreted section 1803 of the Education Law in denying the petition of the Dannemora voters seeking a revote and that therefore the petition fails to state a legally cognizable cause of action. In addition, respondents question the standing of the petitioners to initiate this challenge.
Section 1803 (8) of the Education Law provides as follows: "If at any such meeting the resolution described in subdivision two, three or four of this section shall be presented and shall not be adopted, there shall be no further proceedings at such meeting, except a motion to reconsider the question. No such meeting shall again be called within one year after such original meeting. No new meeting shall be called unless a petition therefor shall be presented to the commissioner in the manner provided in subdivision two of section eighteen hundred two of this article. If no meeting shall be called to reconsider the question within two years after such original meeting or if at any such meeting called within two years after such original meeting the resolution shall again fail of adoption, the order of the commissioner of education to which the resolution relates shall be deemed null and void and of no further force or effect.”
Petitioners have submitted no legal precedent in support of their contention that the voters of the Dannemora District are entitled to reconsider, at another special meeting, their approval of the annexation resolution. The respondents, also without resort to legal precedent, contend that the statutory language of section 1803 (8) precludes a revote by the qualified voters of a district who have previously passed an annexation resolution. The respondents contend that the statute only allows a revote in a district which defeated an annexation resolution.
There are no reported judicial opinions construing the statutory language and the issue raised in this proceeding is of first impression. The court, through its own research, has come upon two somewhat similar situations involving school consolidation proceedings which warrant discussion. The first of these cases is Matter of Ogden v Allen (40 Misc 2d 752, revd 21 AD2d 87, affd 14 NY2d 349). In Ogden, the Commissioner of Education issued a consolidation order under section 1524 of the Education Law. School District No. 18 of the Town of Wallkill adopted a resolution at its adjourned annual meeting *810 on June 3, 1963 approving its consolidation with the City School District of the City of Middletown by a vote of 28 to 26. When news of the vote circulated within the Wallkill District, a petition was immediately drafted directing the school trustees to call a special meeting of the qualified voters to reconsider the action. The meeting was scheduled to be held on June 28 and the Commissioner of Education was specifically asked to await the outcome of the meeting before taking any further action to effectuate the consolidation. The Middletown City School District subsequently adopted a resolution on June 24 consenting to the consolidation and the Commissioner issued his order of consolidation on June 25. On June 28, School District No. 18 rescinded its prior approval of the consolidation by a vote of 56 to 24. A special proceeding was then initiated to annul the consolidation. Special Term rejected the petitioner’s argument that section 2021 (14) of the Education Law gave the school district the right to repeal its earlier resolution approving the consolidation. Section 1524 itself contained no express provision for a revote. Section 2021 (12) upon which the petitioner relied read as follows:
"Powers of voters
"The inhabitants entitled to vote, when duly assembled in any district meeting, shall have power, by a majority of the votes of those present and voting * * *
"14. To alter, repeal and modify their proceedings, from time to time, as occasion may require.”
Special Term stated that to allow a school district to repeal its earlier consolidation approval "would be to invite chaos in school district organization” (supra, 40 Misc 2d, at 754). The Appellate Division disagreed with Special Term and held that ”under the peculiar circumstances of this case we find that subdivision 14 of section 2021 was properly utilized to rescind the action taken at the June 3 meeting” (supra, 21 AD2d, at 90). The Appellate Division rejected the Commissioner’s position that the general power of a school district to rescind an earlier action did not apply to a section 1524 consolidation approval since that section contained no express directive or authorization for a revote. The court found that there was a misunderstanding by the Wallkill voters as to the purpose of the June 3 resolution. The Appellate Division tempered its ruling by stating that "[t]his decision, occasioned by peculiar facts and circumstances, should not be considered a precedent to overrule our prior decisions concerning consolidation after notice” (supra, 21 AD2d, at 91-92).
*811 The Court of Appeals in affirming the Appellate Division interpreted section 2021 to mean that "unless otherwise forbidden and unless rights have intervened, a school district meeting has general powers to change or rescind action previously taken” (supra, 14 NY2d, at 352-353). The Court of Appeals held that, under the circumstances, the Commissioner acted arbitrarily as a matter of law when he executed an order to consolidate the Wallkill District with specific knowledge that a special meeting was imminent to reconsider the district’s affirmative vote.
The second relevant case is Matter of Ashton v Board of Educ. (44 Misc 2d 780, affd 22 AD2d 992) which concerned a long-studied proposal to consolidate numerous smaller school districts with the City of Saratoga Springs District. Prior to a final consolidation vote, the residents of Milton Common School District No. 5 (Milton No. 5) expressed a preference to consolidate with the Ballston Spa District rather than Sara-toga Springs. Thereafter, a plan to annex Milton No. 5 to Ballston Spa was proposed with the condition that the northeast corner of Milton No. 5 be subsequently annexed to the Saratoga Springs District. The Ballston Spa Board of Education then passed resolutions pursuant to section 1525 of the Education Law to approve the annexation of Milton No. 5 and to subsequently annex the northeast corner of Milton No. 5 to the Saratoga Springs District. The Saratoga Springs Board of Education adopted similar resolutions. The Commissioner of Education then signed an order annexing Milton No. 5 into the Ballston Spa District. Following such action, some residents of the northeast corner of Milton No. 5 raised objection to the planned annexation into the Saratoga Springs District.
Elections to ratify the annexations were then held in the various affected districts. Voters in Milton No. 5 approved annexation into the Ballston Spa District while voters in 18 other districts passed resolutions approving annexation into the Saratoga Springs District. Subsequently, the Ballston Spa Board of Education adopted a resolution rescinding its previous consent to allow the annexation of the northeast portion of former Milton No. 5 into the Saratoga Springs District. This rescission was challenged by a resident of the northeast portion of former Milton No. 5.
Special Term held that the Ballston Spa Board of Education "did not have the authority to annul the previous consent where so many people have since relied upon its action and *812 changed their position as a result of this reliance” (supra, 44 Misc 2d, at 784). The Appellate Division affirmed on the opinion at Special Term.
In considering the pertinent provisions of the Education Law and applying the rationale advanced in the Ogden and Ashton cases (supra) the court is of the opinion that the Commissioner in the case at bar did not act arbitrarily, capriciously or contrary to law when he rejected the petition of Dannemora voters seeking a second special meeting to reconsider their annexation approval. Unlike the facts in Ogden, there is no claim that the Dannemora voters misunderstood the import of the resolution presented at the first special meeting. Indeed, a very high percentage of eligible voters cast ballots. Section 1803 (8), in the court’s opinion, allows a reconsideration of an annexation proposal by only the voters in a district which previously defeated the resolution. In this case, the voters of Saranac, in reliance upon the positive vote of the Dannemora electorate, reversed their rejection of the merger. The end result of such approval is the annexation of the Dannemora District into the Saranac District. Since the Legislature saw fit only to allow a revote in districts where consolidation was disapproved, the court holds that the voters of the Dannemora District were not deprived of due process by the Commissioner’s decision to deny the petition seeking a revote.
The petition is dismissed, without costs.

 The election results were not specified in the petition or answer. However, during oral argument, the court was advised that the Saranac voters had reversed their earlier determination and passed a resolution approving annexation.