*412 OPINION OF THE COURT
George B. Ceresia, Jr., J.
In this CPLR article 78 proceeding, petitioner Board of Education of the Lisbon Central School District challenges the Education Commissioner’s determination that certain lands lie within the boundaries of the Ogdensburg Enlarged City School District and not within Lisbon Central School District. The Commissioner’s determination is neither irrational nor contrary to law. Hence, it must be sustained (Matter of Schuylerville Cent. School Dist. v Commissioner of Educ. of State of N. Y., 152 AD2d 241, 245 [3d Dept 1989]).
The disputed lands belonged formerly to a State institution, St. Lawrence State Asylum, and were annexed to the City of Ogdensburg in 1901. The parties agree that prior to the annexation, the asylum property lay within the educational jurisdiction of the Town of Lisbon Common School District No. 1. The City School District maintains — and the Commissioner agreed — that the expansion of the municipality in 1901 worked an identical expansion of the Ogdensburg School District. Petitioner denies that the municipal annexation lawfully could enlarge the City School District and argues that the asylum property remained part of the Town of Lisbon Common School District No. 1 until petitioner annexed that district in 1956.
There is no doubt that the Legislature, when it provided for the incorporation of the City in 1868, plainly intended that all territory within the corporation’s limits comprise one school district (see, L 1857, ch 382, § 1, as amended by L 1868, ch 249, § 30). Much argument is directed to the question whether that intent remained operative and effectual in 1901. However, the court need not reach into those murky waters to decide this case. As the Commissioner correctly found, the boards of the two contending districts as well as officials of the predecessor district, Lisbon Common No. 1, historically have treated the asylum property as lying within the Ogdensburg Enlarged City School District. Since 1901, the Ogdensburg District, without a word of objection or protest from petitioner or its predecessor, has furnished a tuition-free education to children residing in the disputed territory and has permitted residents of the area to vote in its elections. Petitioner produced no evidence that any official of Lisbon Central or Lisbon Common No. 1 considered the asylum property to be part of those districts for educational, voting, or taxation purposes at any *413 time during the period from 1901 until this controversy first arose in 1991. In light of the unrefuted historical evidence, the Commissioner determined there is a strong presumption that the asylum property lies within the Ogdensburg District. Petitioner failed to discharge the burden of overcoming that presumption.
Contending that equitable doctrines may not be asserted against a school board acting in a governmental capacity (Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 33 [1984]), petitioner argues that the Commissioner’s ruling was affected by an error of law. But this is not merely a case of laches or estoppel, nor, for that matter, even one of longstanding acquiescence.* Time can shift burdens, and its long passage uninterrupted by protest or challenge raises a justified presumption that matters settled in the distant past were accomplished regularly and agreeably to law. It was not the Ogdensburg District’s burden to show how the asylum lands were transferred to its jurisdiction, and the case is long past the point where the City School District need prove that it relied to its prejudice on some word or deed of petitioner or its predecessor. Acts bespeak intention, so too does a long course of inaction unveeringly sustained. For nearly a century, the Ogdensburg District has delivered educational services to the residents of the disputed lands without challenge from any quarter. Lisbon Common did not protest in 1901 when the City District first assumed that responsibility. Nor did it assert any claim of jurisdiction in 1943 when a map prepared by the Education Department purported to show that the asylum property lay within its boundaries. Similarly, petitioner asserted no claim of jurisdiction in 1956 when it annexed Lisbon Common, although the map prepared in 1943 allegedly was still in effect. Nor did it raise such a claim in *414 1958 when the State Master Plan for School District Reorganization clearly reaffirmed Lisbon Central’s jurisdiction over the former Lisbon Common District. Furthermore, there was no evidence that Lisbon Central or Lisbon Common was ever considered a school district partly within a city until the City of Ogdensburg annexed additional territory in 1979.
The conclusion is inescapable. After 1901, Lisbon Common did not include the disputed territory. For nine decades the agreed boundary dividing the City School District from Lisbon Common and its successor Lisbon Central manifestly placed the asylum lands within the jurisdiction of the Ogdensburg School District. Petitioner had the heavy burden of proving no such jurisdiction obtained. Failing that proof, the Commissioner reasonably could determine that the authority to tax and the responsibility to educate the inhabitants of the disputed lands remained where it has been since the beginning of this century — with the Ogdensburg District. There is no reason to annul his decision (Matter of Board of Educ. v Nyquist, 28 AD2d 936, 938 [3d Dept 1967]). Accordingly, the petition herein should be dismissed.

 Furthermore, it is by no means certain that estoppel does not lie in this case. The rule that equitable estoppel may not be asserted against a governmental entity is subject to exception when there is a showing of "manifest injustice” (see, Incorporated Vil. of Freeport v Sanders, 121 AD2d 430, 431 [2d Dept 1986]; see also, Matter of Daleview Nursing Home v Axelrod, supra, at 33; Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668 [1976]). Also, when the interested parties are all governmental entities, the considerations that favor the rule (sovereign immunity, protection of the public fisc, and separation of powers) are diminished (cf., Matter of Daleview Nursing Home v Axelrod, supra, at 34). Application of equitable estoppel against a school board has been upheld by the Third Department (see, Matter of Ashton v Board of Educ., 22 AD2d 992 [3d Dept 1964], affg 44 Misc 2d 780 [Sup Ct, Saratoga County 1963]).